John L. FELLERS and Linda D. Fellers, Plaintiff,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant.

Civ. A. No. T–4878.

United States District Court, D. Kansas.

July 16, 1971.

---

Reginald LaBunker, Topeka, Kan., for plaintiffs.

W. E. Treadway, Topeka, Kan., for defendants.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

This is a personal injury action based upon negligence brought by the plaintiffs in the U.S. District Court for the District of Kansas. The plaintiffs allege the court has jurisdiction because of diversity of citizenship under 28 U.S. C.A. 1332. In plaintiffs' original complaint they alleged only that they were citizens of Kansas and that defendant was incorporated in Delaware. They were allowed to amend their complaint so as to allege also that defendant's "principal place of business," was other than Kansas. The defendant has made a motion to dismiss on the grounds that there is no diversity of citizenship as the defendant's "principal place of business" is in Kansas.

The plaintiffs first point out that the court may reserve judgment as to whether defendant corporation has its principal place of business in a certain state so as to destroy diversity of citizenship until all the evidence has been taken, as in Collins v. New York Central System, 117 U.S.App.D.C. 182, 327 F.2d 880 (1963). However in the cases reviewed by this court, this is not the usual practice. Lurie Company v. Loew's San Francisco Hotel Corp., 315 F.Supp. 405 (D.C.1970). It is "advisable generally to decide such defenses as * * * lack of jurisdiction * * * promptly after they are raised, and not defer them to trial." 2A Moore's Federal Practice 2354, ¶ 12.16. Also such procedure of deferring jurisdictional questions to trial would defeat the purpose of the 1958 Amendment of § 1332, which was to narrow the federal courts jurisdiction and ease their workload. U. S. Congressional & Administrative News, 1958, pages 3099, 3100.

It is undisputed by either party and is a fact that defendant in 1969 changed the State of its incorporation from Kansas to Delaware. The issue as to jurisdiction arises because defendant maintains that its "principal place of business" within the meaning of 28 U.S.C.A. § 1332(c) is Kansas, and therefore, since plaintiffs are citizens of Kansas as alleged in their complaint, the court does not have diversity jurisdiction under 28 U.S.C.A. § 1332. There is no federal constitutional question involved.

The relevant part of 28 U.S.C.A. § 1332 involved here is:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"(1) citizens of different States;

\*    \*    \*    \*    \*    \*

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business \* \* \*."

■ Whether the "principal place of business" is in a particular state is a question of fact to be decided on a case by case method. Briggs v. American Flyers Airline Corporation, 262 F.Supp. 16 (D.C.1966), Kelly v. United States Steel Corp., 284 F.2d 850 (3rd Cir. 1960), Scot Typewriter Co. v. Underwood Corp., (S.D.N.Y.1959) 170 F.Supp. 862. The Tenth Circuit subscribed to this view in United Nuclear Corp. v. Moki Oil and Rare Metals Co., 364 F.2d 568 (10th Cir. 1966), and said, "Where the corporation has its principal place of business is a question of fact to be determined by the character of the corporation, its purposes, the kind of business in which it is engaged and the situs of its operations."

The plaintiff has shown by affidavit the following facts in favor of defendant's principal place of business being other than Kansas: that defendant applied to the Secretary of State of the State of Kansas for authority to engage in business in the State of Kansas as a foreign corporation on December 3, 1969; that defendant was a regularly and properly organized corporation under the laws of the State of Delaware; that in April 1970 the A. T. & S. F., Inc. filed an amendment which changed the name to The Atchison, Topeka, and Santa Fe Railway Co.; that on April 6, 1970 Atchison, Inc. merged into A. T. & S. F., Inc.; and that of 3 directors and 10 officers of defendant only one officer's residence is in Topeka, Kansas, the rest residing in Chicago, Illinois.

The facts in favor of defendant's principal place of business being in Kansas submitted in defendant's affidavit are: the company was organized and originally incorporated in Kansas; it was organized originally to do business exclusively in Kansas; since 1895 most of the executive officers have lived in Chicago, Illinois for the convenience of certain officers in conducting business with a minimum of travel to and from the financial-commercial centers of Chicago, New York and Washington; one officer and various other supervisory and department head personnel reside in Topeka, Kansas; the general office building in Topeka, Kansas has, at all times, been owned by defendant or its corporate predecessors and is occupied exclusively by defendant for railroad business and is the largest building in the world devoted to the exclusive occupation of a single railroad; the general office building in Topeka, Kansas occupies more than 350,000 square feet, whereas by comparison its offices in Chicago, are located among public rental occupants in the Railway Exchange Building, and occupy only 130,000 feet; the defendant maintains only a registered office in the State of Delaware; the function of the executive offices in Chicago is to control intercorporate affairs, while the function of defendant's offices in Topeka is to control day-to-day management of the railroad business and the business dealings with the public in general; the defendant is authorized to do business in twelve states; that defendant's income tax return was always, until 1968, filed in Wichita, Kansas, while since its incorporation in 1968 in Delaware as a subsidiary of Santa Fe Industries, Inc., they have been permitted to file a consolidated tax return, but Internal Revenue Service has informed defendant that the income tax returns for its corporate railway system as well as for its parent will be audited

at Topeka, Kansas; in 1969, the last year which these statistics are available, 15.3% of the gross revenue of the defendant was earned in Kansas whereas only 5.75% was derived from Illinois; in 1969 the operating revenue in Kansas was $110,013,319.73 compared to $41,344,375.50 for Illinois; defendant's operating expenses in 1969 amounted to $93,046,308.25 for Kansas compared to $36,118,957.42 for Illinois; in March of 1970, 9,929 people were employed by defendant in Kansas compared to 2,925 in Illinois; defendant's Topeka office does far more business with the general public than does its Chicago office; the defendant's freight yards and car repair shops are considerably larger in Kansas than elsewhere; during 1970, 547 freight cars were constructed in Topeka while none were built in Illinois; the Topeka facilities for construction of new freight cars and for freight car repair include tracks, workshops, and storehouse facilities covering approximately 91 acres, of which 772,850 square feet are under roof, while in Chicago defendant's facilities occupy approximately 20 acres of which 158,580 square feet are under roof; the business records of the defendant's railroad system are kept and filed in its General Office at Topeka, Kansas; defendant's accounting transactions are recorded in its books and files are stored in computers in Topeka; all of defendant's computers for its system data are located in Topeka; the defendant's original deeds, contracts, title documents, and other documentory archives are kept in a special vault for this purpose in Topeka; defendant's bills are all audited in Topeka, and remittances in payment are controlled by the Treasurer in Topeka; all payroll is prepared and checks in payment of wages are made in Topeka; defendant's monthly, quarterly and annual reports to the Interstate Commerce Commission are originated and sent from the Topeka offices; and finally defendant's communication control center for microwave, radio and telephone communications is in Topeka, Kansas.

In federal court the burden of proving all jurisdictional facts rests upon the plaintiff or person asserting that the court has jurisdiction. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Birmingham Post Co. v. Brown, 217 F.2d 127 (5th Cir. 1954); Industrial Electronics Corp. v. Cline, 330 F.2d 480 (3rd Cir. 1964). Of the facts that plaintiff offered by affidavit, the only fact that tends to show that the defendant's principal place of business is not in Kansas, is the fact that 9 out of 10 officers of the corporation and all 3 directors live in Chicago, Illinois.

Considering the facts offered by defendant's affidavit also, the issue is now narrowed to one of whether the principal place of business of a corporation is in the state where the board of directors and the executive officers reside or in the state where the bulk of its assets are located and where the management of the day to day business and most of the business with the general public is located. It is proper to consider defendant's affidavit when ruling on motions to dismiss on the grounds of jurisdictional defect. See Federal Rules of Civil Procedure 12(d) and 43(e) and Lurie Company v. Loew's San Francisco Hotel Corp., 315 F.Supp. 405 (D.C.1970).

This Court is controlled by the holding of the Tenth Circuit in United Nuclear Corp. v. Moki Oil and Rare Metals Co., supra, "where a corporation has its principal place of business for purposes of diversity jurisdiction is a question of fact to be determined by character of corporation, its purposes, kind of business in which it is engaged, and situs of its operations." The defendant is a large corporation which does business in twelve states, has its executive offices in Illinois, has a large part of its assets in Kansas and manages its day-to-day business from Kansas and does more business with the public in general in Kansas, than in the other eleven states. They also keep all their important documents and records in Kansas. An objective analyzation of all of the above facts

leads to the overwhelming conclusion that the defendant's principal place of business is in Kansas.

Some cases have given more weight to the fact of location of executive offices than other facts, i. e., the so called "nerve center" test. From the Court's analysis of the cases it appears that in most of these cases the corporation was large and doing business in a large number of states, that there was no clear location of operating assets, and that the day-to-day management was either split among several states or was in the same state as the executive offices. Such a case was United Nuclear Corp. v. Moki Oil and Rare Metals Co., supra. The facts in that case showed that the corporation was a vertically integrated nuclear company, it had five divisions, for the most part geographically separated, and all but one division reported to the executive office independently of each other. The court found that the corporation was not a citizen of the location of one of the divisions, i. e., New Mexico. The court stated:

> "Where a corporation carries on its business in a number of states, no one of which is clearly the state in which its business is principally conducted, the state where a substantial part of its business is transacted and from which centralized general supervision of all of its business is exercised, is the state in which it has its principal place of business."

The Court in the case at hand, however, holds that the defendant's business is principally conducted in Kansas. The holding is identical to Gilardi v. Atchison, Topeka and Santa Fe Railway Co., 189 F.Supp. 82 (D.C.1960), where the Illinois federal court found that the defendant's, in this case, principal place of business was in Kansas. The court in that case after giving a resume of the facts stated:

> "These facts support only one conclusion: The Santa Fe has its principal place of business in Topeka, Kansas. This conclusion is based on a thorough analysis of the facts, the legislative history of Sections 1332 and 1441, the decisions construing the Bankruptcy Act, 11 U.S.C.A. § 11, which Congress has directed to be our guide, and the decisions construing Sections 1332 and 1441 since the 1958 amendment.

> "The result reached in this case is consistent with the intent of Congress. To equate principal place of business to executive offices would not only do injustice to defendants, but would run the risk of creating a substitute fiction for the fiction of charter citizenship."

The Court's conclusion in this case is that between a state where a corporation's executive offices are located and a state where the bulk of the assets and where management of day-to-day affairs are located, the latter state is the principal place of business for diversity of citizenship purposes.

Inasmuch as the Court's conclusion is the above, there is no diversity of citizenship within the meaning of 28 U.S. C.A. § 1332(c), as both parties are citizens of Kansas, and this Court must grant defendant's motion to dismiss.

It is so ordered.