NASSAU SPORTS, a limited partnership,
Plaintiff,

v.

Garry PETERS et al., Defendant.

Civ. A. No. 72 C 1086.

United States District Court,
E. D. New York.

Oct. 12, 1972.

See also, D.C., 352 F.Supp. 870.

Roth, Carlson, Kwit, Spengler & Goodell, New York City, and Fritz, Christ, O'Brien & Farrell, Mineola, N. Y., for plaintiff, by J. Edward Meyer, III, New York City, M. Halstead Christ, Mineola, N. Y., and Fred J. Halsey, Jr., New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Peters and Metropolitan Hockey Club, Inc., by Jay Topkis, Anthony M. Radice, New York City, of counsel.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for defendant Abrahams, by Emanuel Dannett, Robert I. Gosseen, New York City, of counsel.

MEMORANDUM DECISION
AND ORDER

NEAHER, District Judge.

Plaintiff, owner of the newly-franchised New York Islanders Club in the

National Hockey League ("NHL"), commenced this action in the New York Supreme Court, Nassau County, to enjoin defendant Garry Peters ("Peters"), a professional hockey player, from playing for defendant Metropolitan Hockey Club, Inc. ("Metropolitan"), in breach of plaintiff's alleged contract rights to Peters' exclusive services. The defendants joined in removing the action to this court on the ground of diversity of citizenship and jurisdictional amount, 28 U.S.C. § 1332(a). Plaintiff has moved to remand the action to the State court, asserting incomplete diversity in that Metropolitan, a New Jersey corporation, has its principal place of business in New York.[1]

Concededly, Metropolitan was incorporated in the State of New Jersey and is a citizen of that state.[2] But since it is a corporation, diversity jurisdiction depends upon the location of Metropolitan's "principal place of business" within the meaning of 28 U.S.C. § 1332(c). That question is primarily one of fact to be determined upon review of the total activity of the corporation in terms of "such facts as the character of the corporation, its purposes, the kind of business in which engaged and the situs of its operations." Bruner v. Marjec, Inc., 250 F.Supp. 426, 427 (W.D.Pa.1966). See also Inland Rubber Corporation v. Triple A Tire Service, Inc., 220 F. Supp. 490 (S.D.N.Y.1963) and Epstein v. Guilford Industries, Inc., 218 F.Supp. 286 (S.D.N.Y.1963). Moreover, even though it is plaintiff who contests federal jurisdiction, the burden is on Metropolitan to satisfy the court that its principal place of business is in fact in a place other than New York. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

Metropolitan's affidavit opposing remand more than adequately meets its burden of establishing that its principal place of business is not in New York at the present time. Admittedly, Metropolitan was organized to own and operate a professional hockey team under franchise of the World Hockey Association ("WHA"). WHA itself is a newly formed league of professional hockey clubs expecting to make their debut this coming hockey season. Although Metropolitan has negotiated a lease to enable its team, the New York Raiders, to play half their regular season games in Madison Square Garden, up to this time the team it has been putting together has neither played any hockey games nor even practiced in New York. The remaining half of the New York Raiders' regular season games will, of course, be played in other WHA league cities throughout the United States and Canada. At the present time all personnel actually connected with the playing of hockey are located in New Jersey. The team's tryout rink is the New Jersey Ice Palace located in Ocean County, N.J. During the regular season the team will use the Branchbrook Arena in Newark, N.J. as its practice rink. Metropolitan has also arranged for the use of another practice rink in Essex County, N.J. Once the season starts the players, coaches and associated personnel will spend approximately 80% of their time in New Jersey.

In support of its motion to remand plaintiff stresses undeniable facts that Metropolitan's team is named "New York Raiders"; that 39 games comprising the entire home schedule of the Raiders are scheduled *to be* played at Madison Square Garden; that a ticket brochure shows that ticket sales for the Raiders' home games, as well as inquiries concerning sales, are to be directed

---

1. While the action was pending in the State court a temporary restraining order was issued on ex parte application of the plaintiff which has remained in effect during consideration of this motion.

2. There is no dispute that Peters is a citizen and resident of the Province of Saskatchewan, Canada, and defendant Charles L. Abrahams, a citizen of the State of California residing in Los Angeles.

to and will be handled by Metropolitan employees now located in an "office" in New York City, where ticket sales are in fact now taking place; and that Metropolitan's promotional activities, including newspaper, radio and television advertisement, media releases and press conferences emanate almost exclusively from the New York City "business office" of the Raiders. Finally, plaintiff avers, Metropolitan has an active substantial operating account at a Manufacturers Hanover Trust Company branch in New York City; the so-called "office" of Metropolitan in New Jersey is but the office of a law firm; and no telephone listing can be found for Metropolitan in the phone book.[3]

Challenging the weight of these facts, Metropolitan's affidavit points out that its corporate headquarters and executive offices are located at 2600 South Broad Street, Trenton, New Jersey. Its separate telephone number there is documented. The building—a brick structure of 5,000 square feet—is owned by Metropolitan's owners. Admittedly, the law firm of Lewis, Siegel & Wood, registered agent for Metropolitan, has its office there but Metropolitan's offices are separate and apart from the law firm's offices and clearly indicated as such. Richard Wood, Metropolitan's president and treasurer, and Seymour Siegel, chairman of the board, vice president and secretary, have their offices with Metropolitan at that address, reside in New Jersey, have no offices in New York and spend in excess of 95% of their time in New Jersey. Metropolitan's principal staff, consisting of five or six full and part-time employees, is located at the New Jersey headquarters and all of its stockholders reside in New Jersey.

All decision-making as well as Metropolitan's important correspondence and some ticket sales are handled by the Trenton office. So too are employment matters, interviews with the scouting of players, notices and payments with respect to the Madison Square Garden lease and cable television negotiations with Madison Square Garden.[4]

Prior to May 1972 Metropolitan had no office in New York and no personnel located there. In May an office was opened in two rooms in the Statler Hilton Hotel in New York City, located virtually across the street from both Madison Square Garden and Pennsylvania Station. Two employees are stationed there, one a typist and the other to sell tickets. As Metropolitan points out, Madison Square Garden is presently the only facility available to it which is suitable for professional major league hockey in the metropolitan area, including New Jersey, and Metropolitan had no choice but to schedule its local games there. Since Manhattan is the center of the metropolitan area from which Metropolitan hopes to draw its customers, a ticket outlet in close proximity to the Garden is a necessity. Judicial notice may be taken that thousands of New Jersey residents, who daily stream through Pennsylvania Station to and from their employment in Manhattan, would find it more convenient to obtain tickets to Raiders' games in New York than in distant Trenton.

Metropolitan admits that most press releases are issued from the Statler Hil-

3. Subsequent to the argument, plaintiff's counsel furnished the court with a copy of a complaint filed in the United States District Court for the Central District of California captioned "World Hockey Association, et al. v. National Hockey League, et al., Civil Action No. 72–2094AAH." The complaint was prepared by California attorneys representing WHA and its constituent clubs, including Metropolitan, and alleges that Metropolitan has "a place of business" at "Statler Hilton Hotel, Room 1678 . . .,

New York, N.Y." (par. 4). Metropolitan admits having such an office, but for the reasons hereinafter noted it cannot be considered a "principal place of business."

4. Metropolitan also points out that, contrary to plaintiff's assertion, its principal bank account is with the Security National Bank of Trenton, N. J. and that the Manufacturers Hanover branch plaintiff mentions acts only as transfer agent for Security National.

ton office because Manhattan is the center of the New York metropolitan area press. Since press releases must be delivered by messenger to the news media, it is cheaper and quicker to deliver them from there than from Trenton. Most press releases, however, are prepared in the New Jersey offices and all are cleared by executives there. The great majority of press conferences have taken place in New Jersey—eight to ten—as compared with four press conferences held in New York.

Metropolitan had its inception in January of this year. Its affidavit makes it perfectly clear that it is a fledgling enterprise, the major portion of whose activities to date have taken place in New Jersey and outside New York. It is conceivable that at some future time Metropolitan's business operations may become so New York-centered that it will qualify as a citizen of this state for purposes of diversity jurisdiction. That time is not now. Its present activities in New York, relied on by plaintiff, may conceivably satisfy venue or "long-arm" jurisdiction requirements in an original suit. But "transacting" or "doing business" in New York for such purposes is not the standard for locating "principal place of business" to determine whether duality of citizenship exists which would bar removal. See Bartlett v. Hudson Hosiery Co., 183 F. Supp. 1 (E.D.N.Y.1960).

In light of the facts adduced by Metropolitan establishing that the bulk of its operations to date have taken place in the state of New Jersey and that it does not have a principal office in New York, it is clear that complete diversity of citizenship does exist at the present time and that plaintiff's motion to remand the case to the New York Supreme Court for Nassau County must be denied.[5]

So ordered.

5. This disposition makes it unnecessary to rule upon defendants' cross-motion to amend their removal petition to support their further contention that remand

must be denied on the ground that the complaint presents a federal question under the Labor Management Relations Act, 29 U.S.C. § 185 et seq.