**NORTHEAST NUCLEAR ENERGY COMPANY, the Connecticut Light and Power Company, the Hartford Electric Light Company, and Western Massachusetts Electric Company**

v.

**GENERAL ELECTRIC COMPANY.**

**CONNECTICUT YANKEE ATOMIC POWER COMPANY**

v.

**GENERAL ELECTRIC COMPANY.**

Civ. Nos. H–76–289, H–76–290.

United States District Court, D. Connecticut.

Aug. 16, 1977.

ness is in the state of New York, that the court has diversity jurisdiction over the cases, and that it is therefore unnecessary to decide whether a federal question is presented.

John Crosskey, Raymond B. Green, Day, Berry & Howard, Hartford, Conn., for plaintiffs.

William R. Murphy, Robert K. Ciulla, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., William Bruce Hoff, Jr., Ronald W. Szwajkowski, Mayer, Brown & Platt, Chicago, Ill., for defendant.

### RULING ON PLAINTIFFS' MOTIONS FOR REMAND

BLUMENFELD, District Judge.

Plaintiff utility companies commenced these companion contract and misrepresentation actions against the General Electric Company ("General Electric") in the Superior Court for Hartford County. The subject matter of the contracts involves the reprocessing of spent nuclear fuel. All plaintiffs, except Western Massachusetts Electric Company, are incorporated and have their principal places of business in Connecticut. Contending that its principal place of business was in New York and that the plaintiffs' claims arose under the laws of the United States, defendant removed the cases to federal court.[1] 28 U.S.C. § 1441. Plaintiffs now seek to remand to state court arguing that General Electric's principal place of business is in Connecticut and that this court is without federal question jurisdiction. 28 U.S.C. § 1447(c). A hearing was held solely on the jurisdictional issues at which the parties presented both testimony and considerable documentary evidence. *See, e. g., Lurie Company v. Loew's San Francisco Hotel Corp.,* 315 F.Supp. 405, 406–07 (N.D.Cal.1970); *Textron Electronics, Inc. v. Unholtz-Dickie Corp.,* 193 F.Supp. 456 (D.Conn.1961). Based on my review of the facts, I find that General Electric's principal place of busi-

I.

The federal district courts have original jurisdiction over civil matters between citizens of different states where the amount in controversy exceeds $10,000. Title 28, U.S.C. § 1332(c) provides that a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." General Electric is incorporated in the state of New York. The question presented to the court by plaintiffs' motions is whether defendant's principal place of business is also in New York or whether it is located in Fairfield, Connecticut where General Electric now maintains its executive offices. Although plaintiffs have moved to remand, the burden is on the defendant to demonstrate that when the actions were filed, there was a diversity of citizenship between the parties. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Nassau Sports v. Peters,* 352 F.Supp. 867, 868 (E.D.N.Y.1972).

The question of a corporation's principal place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations. *Steinbock-Sinclair v. Amoco International Oil Co.,* 401 F.Supp. 19, 24 (N.D.Ill.1975); *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 864 (S.D.N.Y.1959); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3625 at 802 (1975). In reviewing these factors, certain courts have given particular emphasis to (1) the corporate "nerve center" from which executive and administrative functions are directed, *Scot Typewriter Co. v. Underwood*

---

1. It is conceded that the amount in dispute exceeds $10,000.

*Corp., supra,* and (2) the locus of day-to-day business operations and activities of the company. *Kelly v. United States Steel Corp.,* 284 F.2d 850 (3d Cir. 1960). But as many courts and commentators have recognized, these cases and the tests they propose are not necessarily inconsistent. *Egan v. American Airlines, Inc.,* 324 F.2d 565 (2d Cir. 1963); *Danbury Bowlarama Corp. v. RCA Corp.,* 414 F.Supp. 354, 357 (S.D.N.Y. 1976); *Fellers v. Atchison, Topeka & Santa Fe Ry. Co.,* 330 F.Supp. 1334, 1338 (D.Kan. 1971); *Mahoney v. Northwestern Bell Telephone Co.,* 258 F.Supp. 500, 502 (D.Neb. 1966), *aff'd,* 377 F.2d 549 (8th Cir. 1967); *Leve v. General Motors Corp.,* 246 F.Supp. 761, 764 (S.D.N.Y.1965); *Inland Rubber Corp. v. Triple A Tire Service, Inc.,* 220 F.Supp. 490, 496 n.16 (S.D.N.Y.1963); *Moore's Federal Practice* ¶ 0.77[3.–1] at 717.64 (2d ed. 1976).[2] In the words of Judge Pollack, this circuit has leaned toward a "consolidated test" looking to both the place where general management and business policy is formulated and to the site of substantial business operations. *Danbury Bowlarama Corp. v. RCA Corp., supra,* 414 F.Supp. at 357. *See also Egan v. American Airlines, Inc., supra,* 324 F.2d at 565–66.

■ It is clear that no one fact is controlling. However, the weight given various corporate activities should reflect the policy goals of diversity jurisdiction and the 1958 amendments to 28 U.S.C. § 1332(c). The changes in the Act were designed to prevent an essentially local corporation from litigating its controversies with local citizens in federal courts. Moreover, if the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders, then the principal place of business of a corporation should be the place where it has its greatest contacts with the public, where it "most impinges," where it is considered to be "at home." *Moore's Federal Practice, supra,* ¶ 0.77[3.–4] at 717.81. In most instances, that place is likely to be the site where actual business operations of the corporation are carried on since "it is by visible presence, including the employment of local people, that a corporation will become popularly recognized as 'domestic' rather than 'foreign.' " *Inland Rubber Corp. v. Triple A Tire Service, Inc., supra,* 220 F.Supp. at 495.

## II.

■ Turning then from abstract analysis to the application of these principles to the particular facts before the court, it is necessary to compare the nature and quality of the corporate work and business operations of General Electric in New York and Connecticut, particularly Schenectady and Fairfield. General Electric has been historically associated with Schenectady and New York State. The company was founded in Schenectady by Thomas Alva Edison in 1886 and incorporated in New York under a Special Act of the legislature in 1892. Until 1975, General Electric's executive offices were centered in New York City. For security reasons, the company relocated its executive office to Fairfield, Connecticut.[3] Significant corporate activities are still, however, conducted in New York City. The Chairman of the Board, the Vice Chairmen, and certain other senior officers retain offices in New York City and spend significant portions of their time there.[4] International work was headquartered in New York City, and certain treasury work is still done in those offices. In addition, the

2. According to Professor Wright, "*Scot* and *Kelly* simply can be viewed as particular applications of the general rule that the bulk of corporate activity, as evidenced by the location of daily operating and management activities, governs the choice of a principal place of business." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction, supra,* § 3625 at 794.

3. The difficult factual issue presented to the court is thus a product of this relatively simple move up the commuter line and illustrates the artificiality of a jurisdiction based on geographic diversity.

4. Mr. Dance, Vice Chairman of the General Electric Company and Executive Officer, testified that when not traveling, he divides his time equally between the New York City and Fairfield offices. Transcript at 11.

Board of Directors of General Electric usually meets in New York.

In total General Electric employees, physical assets, banking activities, and volume of interstate shipments, New York predominates over other states. New York is the home of some 43,185 General Electric employees, approximately 17% of its entire work force. Over 25,000 of these employees are located in Schenectady. By contrast, Connecticut has only 6,164 General Electric workers. New York has 18.4% of the company's physical assets, the greatest concentration of any state; Connecticut is the situs of only 2.5% of such assets. The average bank balance maintained by General Electric in the state of New York for the year 1975 was over $98 million, six times that of any other state.[5] The average balance for Connecticut was approximately $3 million. In manufacturing operations, New York accounts for the largest dollar value of shipments of any state with over $1.5 billion in goods. General Electric's most extensive manufacturing facilities are in Schenectady which alone produced over $900 million worth of shipments. Less than $200 million in interstate shipments were initiated from Connecticut for the year 1975.

Although Fairfield is the location of General Electric's executive offices, its importance to the company pales beside that of Schenectady. General Electric is a widely diversified company; its management is largely decentralized. For operating purposes, the company is divided into departments, divisions, and groups. Superimposed on that organizational system is a planning and long-range policy structure of Strategic Business Units. For planning purposes, there may be several strategic business units within any given group, division, or even department. The executives centered in Fairfield perform primarily a passive, review function. The strategic business plans and the operating goals of the company are all generated in the field. They are accepted at corporate headquarters so long as they fit within an allotted budget. These executives are not concerned with the day-to-day business operations of the company or even the routine corporate activities necessary to the management of a multi-national company. The staff at Fairfield resembles a kind of think tank which might be located anywhere in the United States and which could be quickly relocated with only a minimum of inconvenience to General Electric's operations.

The evidence presented at the hearing demonstrated that General Electric's essential corporate activities and a substantial portion of its business operations are based in Schenectady and the state of New York. General Electric has a total of 4,439 employees in its "Corporate Component."[6] These employees represent those personnel with company-wide responsibility as opposed to those workers with operating jobs in a particular department, division, or group. Of these 4,439 employees, 2,979 work in Schenectady. And of this number, some 1,673 are classified as "exempt" from the application of the Fair Labor Standards Act.[7] Only 570 workers from the Corporate Component are employed in Fairfield of which 362 are classified as exempt.

The particular staffs within the Corporate Component reflect the importance of Schenectady to General Electric's daily operations. The Corporate Research and Development Center which is part of the Corporate Strategic Planning and Studies Staff is located in Schenectady with 1,756 total

---

5. This is the last year for which full figures are available. There is no contention that the situation in 1976 was any different.

6. Although plaintiffs do not challenge the accuracy of General Electric's statistics concerning the distribution of its employees on the various staffs, they have offered other somewhat contradictory figures derived from the company's corporate directory. The evidence showed, however, that the corporate directory was incomplete and inaccurate in its listing of employees. I have therefore relied on defendant's comprehensive numerical analysis of the location of its workers. *Compare* Plaintiffs' Exhibit 6 *with* Defendant's Exhibit F.

7. *See Kelly v. United States Steel Corp., supra,* 284 F.2d at 854; *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 87 n.1 (S.D.N.Y.1974).

employees, 973 of which are exempt from the minimum wage laws. These laboratories do basic research for the entire company and were described as the "spawning ground for all products produced by General Electric."[8] While General Electric's operating units also maintain research laboratories, none are of the character or company-wide nature of the Schenectady center.

General Electric's Corporate Finance Staff which performs all basic finance work is focused in Schenectady. The staff has 434 employees in Schenectady (267 classified as "exempt") compared with 71 in Fairfield (53 classified as "exempt"). The company's books and records are kept by these workers. The Schenectady accounting staff consolidates and compiles financial information including total sales, net income, inventories and accounts receivable for all the departments, divisions and groups of the corporation. These employees have responsibility for the administration of payroll benefits for company officers and direct the corporation's pension plan. Another Schenectady staff consisting of some 134 employees is in charge of conducting internal audits of General Electric's operating components. All of General Electric's tax returns, which on an annual basis number 4,500, are filed from Schenectady by staff there.[9] The United States Internal Revenue Service has three persons permanently assigned to Schenectady to audit the company. The Corporate Treasury Operation which directs management of financial assets and provides certain shareholder functions is also part of the Corporate Finance Staff.

Company-wide administrative and service activities are performed in Schenectady. The corporation's internal telephone, telegraph and data processing systems are located in Schenectady. General Electric's Real Estate and Construction Operation (RECO) forms part of the Schenectady Corporate Administrative Staff. This operation provides expertise to all components of the company in the purchase and construction of land and buildings. RECO, in fact, directed the acquisition and construction of the Fairfield facility. In addition, a majority of the staff of General Electric's Corporate Consulting Services can be found in Schenectady. These persons provide manufacturing and engineering counsel to the entire company. In all there are 786 workers in Schenectady employed in the Corporate Administrative Staff; 431 of these are classified as exempt. In its Fairfield offices, the Corporate Administrative Staff of General Electric has 306 workers, of whom 174 are classified as exempt.

The case then resembles more *Kelly v. United States Steel Corp., supra; Fellers v. Atchinson, Topeka & Santa Fe Ry. Co., supra; Leve v. General Motors Corp., supra;* and *Inland Rubber Corp. v. Triple A Tire Service, Inc., supra,* than *Scot Typewriter Co. v. Underwood Corp., supra.* The daily business operations of General Electric, its accounting, treasury operations, communications network, real estate activities, long-range research and development all emanate from Schenectady and New York State. The people, the money, the physical assets, the company records are predominantly in New York. New York then is the state where General Electric's daily corporate operations are directed and where it conducts a substantial portion of its business and therefore is its principal place of business. *Egan v. American Airlines, supra,* 324 F.2d at 565–66; *Danbury Bowlarama Corp. v. RCA Corp., supra,* 414 F.Supp. at 357.

Since there is a complete diversity of citizenship between the parties, plaintiffs' motions to remand are denied.

SO ORDERED.

---

8. Testimony of Herman R. Hill, Transcript at 103.

9. Where applicable, all of these returns except those filed with the state of Connecticut designate Schenectady as the company's principal place of business. Even the Connecticut returns, though, are filed from Schenectady. While not dispositive, 26 U.S.C. § 6091(b)(2)(A)(i) provides that corporate returns shall be filed in the district "in which is located the principal place of business or principal office or agency of the corporation." *Cf. Uniroyal, Inc. v. Heller, supra,* 65 F.R.D. at 87; *Scot Typewriter Co. v. Underwood Corp., supra,* 170 F.Supp. at 864 n.4.