Danielle ASPAR and Scott Graham, Petitioners/Plaintiffs,

v.

PHARMACIA & UPJOHN, INC., Respondent/Defendant.

No. 1A;97–CV–86.

United States District Court, W.D. Michigan, Southern Division.

Oct. 10, 1997.

H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, for Danielle Aspar, Scott Graham.

Peter A. Patterson, Patterson, Kinney & Ruga, Grand Rapids, MI, for Pharmacia & Upjohn, Inc.

## OPINION

QUIST, District Judge.

Plaintiffs, Danielle Aspar and Scott Graham, filed this action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–208 ("FAA"), and M.C.L. §§ 600.5001–600.5035, to compel Defendant, Pharmacia & Upjohn, Inc. ("PUI"), to arbitrate a dispute under a program known as the Merger Employee Transition Assistance Program ("META"). After arbitrating the dispute for approximately five months, PUI terminated the arbitration. Plaintiffs thereafter filed this action. Plaintiffs allege that the Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332(a). Now before the Court is Plaintiffs, motion to compel arbitration.

### Facts

Plaintiffs are former employees of Pharmacia & Upjohn Company ("PUC"), formerly known as The Upjohn Company. PUC is a Delaware corporation with its principal place of business in Kalamazoo, Michigan. The Upjohn Company changed its name to PUC in June of 1996 in connection with a merger the previous year between the Upjohn Company and a Swedish corporation known as Pharmacia AB. The details of the transaction between the two entities are not entirely clear. However, there is no question that as a result of the transaction, PUC became a wholly owned subsidiary of defendant PUI.

PUI is a Delaware corporation. According to the June 30, 1996, Form 10–Q Report filed by PUI with the Securities and Exchange Commission, PUI's principal offices are located in London, England. Plaintiffs' Exhibit 4 to their reply brief shows that the META program was adopted by PUI, effective December 1, 1995. The purposes of the META program were, in part, to identify positions

within the organization which had become redundant due to the merger, and to assist affected employees in their separation from the organization. The META program provides for arbitration of any dispute under the program, in accordance with the rules of the American Arbitration Association.

Plaintiffs were both longtime employees of PUC. In February of 1996, Plaintiffs were notified by their supervisors that their positions in PUC's Strategic Information Analysis unit were to be restructured and that the unit would be renamed Strategic Research Intelligence. At that time, Plaintiff Aspar was employed as a Strategic Information Analyst and Plaintiff Graham was employed as a Senior Strategic Information Analyst. Both Plaintiffs applied for positions in the new unit but were not selected. As a consequence, they were placed in the META program on May 8, 1996.[1] Plaintiffs remained on PUC's payroll over the next two months and were permitted to look for and bid on job openings within the company. PUC terminated Plaintiffs, employment on July 8, 1996, after they failed to obtain new positions with the organization.

Upon their termination, the plaintiffs received severance pay and other benefits provided under the META program. Plaintiffs declined additional severance pay which they would have received had they signed a release of claims against PUI. On June 19, 1996, Plaintiffs initiated arbitration proceedings pursuant to META requirements. Plaintiffs and PUI arbitrated the dispute until November 22, 1996, when PUI notified Plaintiffs that it would not continue the arbitration unless Plaintiffs admitted that their positions were "significantly restructured," i.e., that they were covered by the META program. Plaintiffs refused to do so and commenced this action to compel arbitration.

### Discussion

PUI contends that Plaintiffs' motion should be denied for several reasons. First, PUI argues that Plaintiffs have sued the wrong defendant because PUC was plaintiffs' employer and, therefore, PUC is the proper defendant in this action. Second, PUI argues that subject matter jurisdiction does not exist because Plaintiffs have not alleged that their claim exceeds the statutory minimum of $75,000, and because the parties are not diverse. Third, PUI argues that the META program is an employment contract and is expressly excluded from coverage under § 1 of the FAA. Finally, PUI argues that even if the META program falls within the purview of the FAA, the only arbitrable issue is whether PUI breached the META program. The Court will address each issue in the order presented.

### A. *Proper Defendant*

■ PUI contends that the proper defendant in this action is PUC, Plaintiffs' actual employer. Plaintiffs argue that regardless of the corporate structure between PUI and PUC, PUI's admissions in its answer, as well as PUI's control over the adoption, implementation, and administration of the META program, show that PUI is the proper defendant in this action. The Court agrees with Plaintiffs.

PUI admits in its answer that it promulgated the META program, that it removed Plaintiffs from their positions, and that it discharged them. (Answer ¶¶ 5–7.) The evidence presented by Plaintiffs in their reply brief, which is undisputed, confirms that PUI adopted, implemented and administered the META program. For example, Exhibit 4, a copy of the entire META program, bears the name of PUI on the cover; the letters attached as Exhibit 5, regarding the terms and conditions of Plaintiffs' separations, refer to Plaintiffs' "separation from Pharmacia & Upjohn, Inc."; and the releases attached as Exhibit 6, which are the releases offered to Plaintiffs in exchange for additional severance pay, are between Plaintiffs and PUI, rather than Plaintiffs and PUC.

---

1. The META program provides that:
    Employees placed in the META program remain as active employees for 60 days. Subsequently, they exit the organization in one of three ways: termination, retirement, or PRTLOA (pre-retirement leave of absence). META transition services continue as detailed in Section XI.
    META program, § I.A.4.

PUI is the proper defendant in this action, even if PUI was not Plaintiffs' actual employer, because it exercised direct control over the META program. In an analogous context, the Sixth Circuit has held that although the plan or the administrator is normally the proper defendant in an ERISA action, the employer may be the proper defendant in a claim for benefits if the employer controlled or took an active part in the administration of the plan. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988). In this case, PUI was not Plaintiffs' employer; however, PUI adopted the META program and exercised substantial, if not exclusive, control over the META program in general and specifically with regard to Plaintiffs' claims. PUI made *no effort to distinguish itself from* PUC, its wholly-owned subsidiary, in the course of administering the META program or in participating with Plaintiffs in the arbitration proceeding. This is not an instance where Plaintiffs have simply named the wrong defendant by mistake. In light of its extensive control over the META program, PUI has not given any valid reason why it should not be named a defendant in this action.

### B. *Subject Matter Jurisdiction*

PUI contends that the Court should deny Plaintiffs' motion because Plaintiffs have failed to satisfy the diversity jurisdiction requirements under 28 U.S.C. § 1332(a) that the amount in controversy exceed $75,000.00 and that the parties be citizens of different states. Plaintiffs concede that they alleged that the jurisdictional amount in controversy exceeds $50,000, when the jurisdictional requirement at the time they filed their complaint was in excess of $75,000.00.[2] However, Plaintiffs assert that their individual claims exceed the jurisdictional threshold and

2. Plaintiffs' failure to allege the proper jurisdictional amount was apparently due to Plaintiffs' oversight of Pub.L. No. 104–317, 110 Stat. 380 (1996), which, effective January 17, 1997, raised the diversity jurisdiction amount from in excess of $50,000.00 to in excess of $75,000.00.

3. The issue of a corporation's " 'principle place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business in

have requested leave to file an amended complaint alleging the proper jurisdictional amount of $75,000.00. The Court finds no prejudice to PUI and, therefore, will grant Plaintiffs leave to file their amended complaint.

■ On the issue of diversity of citizenship, Plaintiffs, who are Michigan residents, have submitted PUI's 10–Q report filed with the Securities and Exchange Commission. The report states that PUI is a Delaware corporation with its principle place of business in the United Kingdom. This information is consistent with PUI's admission in its answer that it is a Delaware corporation with its principal place of business in London, United Kingdom. (Answer ¶ 4.) Under these facts, Plaintiffs and PUI are citizens of different states, and diversity jurisdiction is therefore established.[3] *See* 28 U.S.C. § 1332(c); *Gafford,* 997 F.2d at 161 (noting that a corporation can be a citizen of its state of incorporation and a citizen of the state where its principal place of business is located for purposes of diversity jurisdiction).

### C. *Section 1 Exclusion*

■ PUI next argues that the FAA does not apply to the META program because § 1 of the FAA expressly excludes contracts of employment from the FAA's scope of coverage. Section I provides, in relevant part:

[N]othing herein shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1. PUI argues that the Court should construe the employment contracts exception of § 1 broadly to exclude all employment contracts, including the META program, from coverage under the FAA.

which it is engaged, and the situs of its operations.' " *Gafford v. General Elec. Co.*, 997 F.2d 150, 161 (6th Cir.1993) (quoting *Northeast Nuclear Energy Co. v. General Elec. Co.*, 435 F.Supp. 344, 345 (D.Conn.1977)). In this caw, however, there is no issue of fact because PUI has not presented any evidence that contradicts its own admission and its statements in its 10–Q report that PUI's principle place of business is located in London, United Kingdom.

PUI cites several cases which support its argument for a broad interpretation of § 1. *See Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991); *United Elec, Radio and Mach Workers v. Miller Metal Prods.*, 215 F.2d 221 (4th Cir.1954); *Arce v. Cotton Club*, 883 F.Supp. 117 (N.D.Miss.1995). In *Willis*, the Sixth Circuit examined the language of S 1 and the comments of the chairman of the American Bar Association committee that drafted the bill and concluded, in dicta, that § 1 excludes all employment contracts from coverage under the FAA:

> [T]he plain language of the exclusion, taken with the description of its meaning by the chairman of the committee that drafted the FAA, suggests an intent to create a mechanism through which businesses might agree to resolve disputes without recourse to the courts. Thus, although Congress passed the FAA to ensure that courts honor the contractual agreement of parties who choose to resolve their disputes by arbitration, it limited the scope of the Act by creating a category of contracts not subject to the Act's strictures. Among this category of excluded contracts are "contracts for employment."

*Willis*, 948 F.2d at 311 (citations omitted). The district court in Arce determined that the intent of § 1 to exclude all contracts of employment from the scope of the FAA was apparent from the unambiguous language of that section, without the need to resort to legislative history. *Arce*, 883 F.Supp. at 121.

In contrast to the cases cited by PUI, "[t]he prevailing trend among courts is to hold that the exclusion does not apply to all employment contracts." *Durkin v. Cigna Prop. & Cas. Corp.*, 942 F.Supp. 481, 485 (D.Kan.1996) (emphasis in original). The Sixth Circuit's more recent decision in *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir.1995), which squarely addressed the scope of the S 1 exclusion, represents the

prevailing trend. In Asplundh, the court rejected the discussion of § 1 in *Willis* as dicta, since the resolution of the issue in *Willis* was based upon a finding that the plaintiff's security registration form was not an employment contract. *Id.* at 597. In addressing the scope of the exclusionary clause, the *Asplundh* court reviewed, and found persuasive, the Third circuit's decision in *Tenney Engineering, Inc. v. United Elec Radio & Mach Workers, Local 437*, 207 F.2d 450 (3rd Cir.1953), in which the court held that the exclusionary language of § 1 applied only to workers actually engaged in interstate commerce, *id.* at 452–53. *Asplundh*, 71 F.3d at 597–98. The court also examined decisions from the First, Second, and Seventh Circuits, which reached the same conclusion as the Third Circuit.[4] *Id.* at 598–99.

Based on its review of the language of § 1, the legislative history, and the cases interpreting the scope of the exclusion, the court concluded that:

> the exclusionary clause of § 1 of the [FAA] should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are. We believe that this interpretation comports with the actual language of the statute and the apparent intent of the Congress which enacted it. The meaning of the phrase "workers engaged in foreign or interstate commerce" is illustrated by the context in which it is used, particularly the two specific examples given, seamen and railroad employees, those being two classes of employees engaged in the movement of goods in commerce.

*Id.* at 600–01.[5]

The Court concludes that the Sixth Circuit's holding in *Asplundh* is binding upon

---

**4.** *See Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir.1971) (noting that courts have generally limited the § 1 exclusion to employees involved in, or closely related to, the actual movement of goods in interstate commerce); *Signal–Stat Corp. v. Local 475, United Elec. Radio & Mach. Wkrs.*, 235 F.2d 298, 302–03 (2nd Cir.1956) (agreeing with *Tenney* and concluding that courts should

interpret the FAA to further, rather than impede, arbitration); *Pietro Scalzitti Co. v. Intern. Union of Oper. Eng'r, Local No. 150*, 351 F.2d 576, 580 (7th Cir.1965) (agreeing with Second Circuit that narrow interpretation of § exclusion accords with both modern trend and intent of Congress).

**5.** The Sixth Circuit's holding in *Asplundh* has been cited with approval by both the Fifth Circuit

this Court. Therefore, the Court finds that the META program is not exempt from coverage under the FAA.

### D. *Scope of Arbitration*

Section 2 of the FAA embodies what is now recognized as the liberal federal policy favoring arbitration as a means of resolving disputes between parties. *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). That section provides, in relevant part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In furtherance of this policy, the Supreme Court has directed the federal courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

██ To come within the scope of the FAA, an arbitration agreement must evidence "a transaction involving commerce." *See* 9 U.S.C. § 2. In *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the Supreme Court found the phrase "involving commerce" under the FAA to be coextensive with the broad scope of Congress' powers under the Commerce Clause. *Id.* at 276, 115 S.Ct. at 841. The dispute in this case is between a multinational company and former employees of its wholly-owned United states subsidiary, which has national sales and operations.

Therefore, the Court concludes that the META program involves commerce as defined by the Supreme Court. *See Dickstein,* 443 F.2d at 785 (holding that the creation of an employment relationship which involves commerce satisfies the "involving commerce" requirement of § 2).[6]

Having determined that the META program is within the ambit of the FAA, the Court must determine the issues that are subject to arbitration under the META program. Plaintiffs raised the following issues in their demand for arbitration: (i) whether the META program applied to Plaintiffs' Strategic Information Analysis positions, i.e, whether their positions were significantly restructured; (ii) assuming that Plaintiffs' positions were significantly restructured, did Plaintiffs have the option under the META program of taking the restructured positions; (iii) whether the appropriate pool of applicants for the restructured positions should have included only incumbents or all persons who applied for those positions; and (iv) whether PUI generated appropriate written documentation under the META program to justify restructuring Plaintiffs' positions, for establishing criteria for selection of persons to fill the restructured positions, and for the selection process itself. (Pls.' Br. in Supp. of Mot. to Compel Arbitration, Ex. 5.)

In the instant motion, Plaintiffs contend that the sole issue before the Court is whether the arbitrators have authority to determine whether Plaintiffs' positions were significantly restructured. Notwithstanding this assertion, Plaintiffs have also raised a second issue, which is whether the arbitrators have the authority to determine whether the release required for payment of enhanced severance benefits under the META

---

and the D.C. Circuit. *See Rojas v. TK Communications, Inc.,* 87 F.3d 745, 748 (5th Cir.1996) (noting its agreement with the majority of other courts which have concluded that § 1 should be read narrowly); *Cole v. Burns Int'l. Sec. Serv.,* 105 F.3d 1465, 1471 (D.C.Cir.1997) (noting that every circuit which has squarely addressed the issue has found that § 1 exempts only employment contracts of workers engaged in the actual movement of goods in interstate commerce). Both courts joined the clear majority of courts by holding that § 1 should be narrowly read. *See Rojas,* 87 F.3d at 748; *Cole,* 105 F.3d at 1471.

6. The Court also determines that the META program is subject to arbitration under Michigan's version of the Uniform Arbitration Act, M.C.L. §§ 600.5001–600.5035, which, unlike the FAA, does not require a nexus with commerce. The parties do not dispute that the META program is subject to Michigan's statutory arbitration procedures, however, they differ on which issues may be submitted to arbitration.

program precludes arbitration. PUI contends that neither issue is arbitrable. The parties do agree, however, that regardless of the Court's ruling on these issues, Plaintiffs' claim that PUI breached the META program, which includes issues two, three, and at least part of issue four in Plaintiffs' statement of issues for arbitration, must be submitted to arbitration.

The guiding principles for determining whether a dispute is arbitrable are set forth in the Sixth circuit's opinion in *United Steelworkers v. Mead Corp.*, 21 F.3d 128 (6th Cir.1994):

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a [contract] creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*Id.* at 131 (citing *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–51, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960))).

Section I.A.6. of the META program provides for arbitration of all "disputes or controversy" under the META program. The procedures for arbitration of disputes under the META program are set forth in a separate document entitled "Pharmacia & Upjohn META Arbitration Procedure." That document also the contains the provision in dispute in this case, which defines the scope of the arbitrators' authority to decide disputes as follows:

*Arbitrators' Authority*

> The arbitrators' authority is limited to deciding whether the Company breached the terms of the META program.
>
> The arbitrators are bound by the terms of the META program. They specifically have no authority to (1) add to, detract from, or otherwise modify any provision of the META program or (2) decide any matters that are within the sole discretion of the company in the management and conduct of its business.

(Pls.' Br. in Supp. of Mot. to Compel Arbitration, Ex. 4.)

Plaintiffs argue that the grant of authority to the arbitrators to decide whether PUI breached the terms of the META program necessarily includes the authority to decide whether the META program applies in the first instance. At first blush, the argument makes perfect sense because application of the META program is a necessary predicate to the issue of whether there has been a breach of the program. Otherwise, PUI could thwart an employee's request for arbitration whenever it so desired by taking the position that the META program does not apply.

On the other hand, as stated by PUI's arbitration procedures, arbitration is available to an employee only if the employee has been placed in the META program:

> [PUI] has determined that, for employees placed in the META program by the Company, any controversy or claim arising under the META program, or a breach thereof, shall be settled by arbitration....

The availability of arbitration is further limited by the arbitrators' authority to consider only the narrow issue of whether PUI breached the terms of the META program. Implicit in this grant of authority is the assumption that the META program applies, because if it does not apply, no breach could have occurred.

■ In this case, Plaintiffs seek to have the arbitrators determine which of their two arguments—that their positions were not significantly restructured and therefore the META program does not apply, or that the META program applies and PUI breached it—is correct. In other words, Plaintiffs

**530**

want to "have their cake and eat it too." However, the express limit on the arbitrators, authority does not permit Plaintiffs to pick and choose their positions. They may either pursue arbitration on the issue of whether PUI breached the terms of the META program, or they may pursue non-arbitration avenues, if any, to obtain relief on their claim that their positions were not significantly restructured.

■ It is clear from the language of the provision governing the arbitrators' authority that PUI intended to limit the scope of arbitrations to the issue of whether PUI properly applied the terms of the program. PUI determined that Plaintiffs' positions were significantly restructured and that the META program applied. Based upon that determination, Plaintiffs are free to proceed with arbitration on the issue of whether PUI properly followed the META program. If Plaintiffs seek to contest PUI's decision that their positions were significantly restructured, Plaintiffs are also free to pursue any other available remedies outside of arbitration. This Court does not have authority to exceed the express limitation on the arbitrators' authority by sending to arbitration an issue which the arbitrators have no authority to decide and as to which Plaintiffs have no other right to compel arbitration.[7]

■ The Court also concludes that the issue concerning the scope of the release for entitlement to additional severance pay is not subject to arbitration. Plaintiffs admit that they did not sign the releases offered to them by PUI. While the Court would have no difficulty in deciding that the issue is arbitrable if Plaintiffs had actually signed the releases, it is difficult to conceive how Plaintiffs' failure to sign the releases offered to them by PUI pursuant to the terms of the META program creates an arbitrable issue.

### Conclusion

For the foregoing reasons, Plaintiffs' motion to compel arbitration will be granted in part and denied in part. The Court will order arbitration, limited to the issue of whether PUI breached the META program, including the following issues raised by Plaintiffs in their demand for arbitration:

1. Whether Plaintiffs, as incumbents in their positions, had the option under the META program of taking the restructured positions;

2. The appropriate pool of applicants for the restructured positions, i.e, whether the pool should have included only incumbents or all applicants for the positions; and

3. Whether appropriate written documentation was generated for establishing the criteria for selection of persons to fill the restructured positions, and for the selection process itself.

The arbitration will not include the issues of:

1. Whether Plaintiffs' positions were significantly restructured;

2. Whether the META program applies to Plaintiffs; or

3. Whether the release required for payment of enhanced severance pay precludes arbitration.

7. PUI also argues that the arbitrators are not permitted to determine whether Plaintiffs' positions were significantly restructured because that issue was a matter within PUI's sole discretion to decide in the management and conduct of its business, and is therefore excluded from the scope of the arbitrators' authority. PUI does not cite any specific provision of the META program or its arbitration procedures which supports PUI's position that its determination may not be questioned, not has the Court found any provision that would support this argument. Further, the Court finds that PUI's reliance upon *Reed v. Burton*, 344 Mich. 126, 73 N.W.2d 333 (1955), is misplaced. The issue in Rod was whether the court should enjoin the directors of a corporation from disposing of certain real property belonging to the corporation. *Id.*, at 127, 73 N.W.2d at 334. Unlike the plaintiffs in *Reed*, Plaintiffs in the instant action do not question a transaction by PUI's directors that may be characterized as a corporate governance issue. Rather, Plaintiffs question PUI's actions relative to their own employment positions, which may or may not give rise to a wrongful discharge claim by Plaintiffs. In other words, PUI's actions affect Plaintiffs' individual interests rather than those of PUI as a corporate entity.