**Ernest C. RAPIER, Jr.,
et al., Plaintiffs,**

v.

**UNION CITY NON–FERROUS,
INC., Defendant.**

**Case No. C–3–00–533.**

United States District Court,
S.D. Ohio,
Western Division.

March 18, 2002.

Kent Depoorter, Dayton, OH, for plaintiffs.

Charles Jewett Kurtz, III, Columbus, OH, Lisa Coulter, Columbus, OH, for defendants.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 24, 2001, DECISION, OVERRULING DEFENDANT'S MOTION TO DISMISS (DOC. # 14); PLAINTIFFS' MOTION TO EXTEND DISCOVERY DEADLINE (DOC. # 35) OVERRULED; JUDGMENT TO ENTER DISMISSING CAPTIONED CAUSE FOR LACK OF THIS COURT'S SUBJECT MATTER JURISDICTION; TERMINATION ENTRY

RICE, Chief Judge.

The instant litigation arises out of the injuries sustained by Plaintiff Ernest C.

Rapier, Jr. ("Rapier"), while working for his employer, Union City Non Ferrous, Inc. ("Union City"), which is in the business of making brass castings. According to Plaintiff's Amended Complaint (Doc. # 2), Union City uses four furnaces—two small furnaces (furnaces 1 and 2) and two large furnaces (furnaces 3 and 4)—to melt brass chips, so that they can be placed into molds. On November 2, 1999, Rapier was operating furnaces 1 and 2, while his co-worker, John Hunt ("Hunt"), operated furnaces 3 and 4. On that date, Rapier's supervisor, Dick Mosier ("Mosier"), poked a rod into one of the two larger furnaces, causing liquid brass to shoot out of the furnace, injuring Hunt. Rapier was immediately called to help with furnaces 3 and 4. While Rapier was assisting Mosier on furnaces 3 and 4, Mosier again took a rod and hit the brass on the side of the furnace, causing the brass to break loose, hit the liquid brass in the bottom of the furnace, and shoot back out of the furnace. The shooting liquid brass burned Plaintiff's inner mouth, face, neck, chest, arm, back and buttocks. In addition, it caused Rapier's shirt and trousers to catch on fire, and melted his safety glasses. As a result, Plaintiff suffered third-degree burns to the inside of his mouth, face, arm, back, buttocks and chest, which required him to undergo skin grafts and other surgeries.

On October 30, 2000, Plaintiff initiated the present litigation in this Court against Union City (Doc. # 1). An Amended Complaint was filed on November 2, 2000 (Doc. # 2), setting forth four state law claims for relief against Defendant, to wit: (1) willful breach of its duty, pursuant to the Ohio Administrative Code, to refrain from subjecting him to a dangerous condition, in that Union City required Plaintiff to perform a dangerous task without proper clothing; (2) willful breach of its duty, pursuant to the Ohio Administrative Code, to refrain from subjecting him to a dangerous condition, in that Union City required Plaintiff to perform a dangerous task without out procedures or guidelines in effect to control and to manage the injuries that would be caused by liquid brass spraying from the furnaces; (3) willful breach of its duty, pursuant to the Ohio Administrative Code, to provide a safe working environment, through the provision of proper safety suits, glasses, gloves, boots, or hats; and (4) willful breach of its duty, pursuant to the Ohio Administrative Code, to provide proper safety procedures and guidelines.[1]

On January 8, 2001, Defendant filed a Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(6), which the Court treated as a motion, pursuant to Rule 12(b)(1) (Doc. # 4). On April 24, 2001, the Court overruled that Motion, (Doc. # 13). In that Decision, the Court concluded that Plaintiff had made a *prima facie* showing of subject matter jurisdiction, rendering dismissal of this action, pursuant to Fed. R.Civ.P. 12(b)(1), improper at that time. Applying the Sixth Circuit's "total activity test," the Court had concluded that it was unable to determine, based on the available evidence, whether Union City, Ohio, or Washington, Pennsylvania, is more properly deemed to be Defendant's principal place of business. Thus, there existed a genuine issue of material fact as to the jurisdictional facts, namely the site of Defendant's principal place of business.

On May 2, 2001, Defendant filed a Motion for Reconsideration of the Court's April 24, 2001, Decision (Doc. # 14). The Court subsequently issued an Entry (Doc. # 15), allowing the parties forty-five (45)

---

**1.** In addition, Plaintiff's wife, Rebecca Rapier has asserted a claim for loss of consortium (Count Five).

days to conduct discovery on the issue of subject matter jurisdiction. Within two weeks of the conclusion of that discovery period, Plaintiff was to respond to Defendant's Motion for Reconsideration. Defendant was granted two weeks to file a reply memorandum.

Pending before the Court and ripe for decision is Defendant's Motion for Reconsideration (Doc. # 14). For the reasons assigned, Defendant's Motion is SUSTAINED. The Court set forth the standard governing Defendant's Motion to Dismiss, for want of subject matter jurisdiction, in its prior Decision, and it will be repeated herein.

## I. *Standard Governing Motions to Dismiss, Pursuant to Rule 12(b)(1)*

▉ With a motion to dismiss pursuant to Rule 12(b)(1), the moving party is challenging the court's subject matter jurisdiction. The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

▉ However, where the court elects to decide the jurisdictional issue on the written materials submitted, the plaintiff is required only to make a *prima facie* case

of jurisdiction. *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1983). Where, as here, the jurisdictional question is dependent on the resolution of factual issues, the Court must consider such questions in the same manner as summary judgment issues. *Id.*; *Brown v. Atkinson*, 1998 WL 663185, 162 F.3d 1167 (9th Cir.1998)(citing *Steen v. John Hancock Mutual Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir.1997)). The plaintiff must only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Id.* (citations omitted). In other words, to satisfy the *prima facie* requirement, the plaintiff must provide sufficient evidence to create a genuine issue of material fact as to the jurisdictional facts in question. Thus, *dismissal* for lack of subject matter jurisdiction is proper herein *only if* there is no genuine issue of material fact as to the jurisdictional facts, and the defendant has demonstrated that subject matter jurisdiction does not exist, as a matter of law. The Court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Id.* Although a *prima facie* showing of jurisdiction by the plaintiff is sufficient to avoid dismissal in these circumstances, the plaintiff must ultimately prove subject matter jurisdiction by a preponderance of the evidence. *Id.*

## II. *Defendant's Motion for Reconsideration (Doc. # 14)*

As stated in this Court's prior Decision, Plaintiff has asserted in his Complaint that the Court has subject matter of this litigation, based on diversity of citizenship. He alleges that Union City is a corporation licensed under the laws of the State of Indiana, that he (and his wife) are citizens of Ohio, and that the amount in controversy is in excess of $75,000 (A. Compl.¶¶ 1–3). In its Motion, Defendant contends that the Court may not exercise subject matter jurisdiction herein, because its principal

place of business is located in Ohio. Defendant argues that it is, therefore, a citizen of Ohio, thus destroying diversity of citizenship.[2]

■ 28 U.S.C. § 1332 grants district courts original jurisdiction over civil actions in which the amount in controversy exceeds $75,000, and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). The citizenship of a natural person is determined by his domicile, *Von Dunser v. Aronoff,* 915 F.2d 1071, 1072 (6th Cir.1990), while a corporation is deemed to have the citizenship of both its state of incorporation and its principal place of business. *Safeco Ins. Co. v. City of White House, Tenn.,* 36 F.3d 540, 544 (6th Cir.1994); 28 U.S.C. § 1332(c)(1). A corporation can have only one principal place of business for purposes of establishing its state of citizenship. *Gafford v. General Elec. Co.,* 997 F.2d 150, 161 (6th Cir.1993).

■ In determining whether Union City's principal place of business is located in Ohio, the Court must use the "total activity test," adopted by the Sixth Circuit in *Gafford, supra.* The total activity test is a combination of the "nerve center test," which emphasizes the situs of corporate decision-making authority and overall control, and the "place of activity test," which emphasizes the location of the company's production and service activities. *Gafford,* 997 F.2d at 162. Under the total activity test, the Court must consider all relevant factors and weigh them in light of the facts of the case. *Id.* at 163. However,

> [w]hile each situation is fact-specific, certain generalizations have been made. These were canvassed in *J.A. Olson Co. v. City of Winona,* 818 F.2d 401 (5th Cir.1987), in a section which the Sixth Circuit excerpted in its opinion in

*Gafford. First,* the principal place of business of a far-flung corporation will generally be its nerve center. *Olson,* 818 F.2d at 409 (citation omitted). *Second,* the principal place of business of a corporation with significant administrative authority and activity in one State and lessor executive offices but principal operations in another is generally the district of the former. *Id.* (citation omitted). *Third,* the principal place of business of a corporation with its corporate headquarters in one State and its single activity in another State will generally be in the State of its operations. *Id.* (citation omitted).

*NCR Corp. v. Gartner Group, Inc.,* 1997 WL 1774881 (S.D.Ohio Sept. 15, 1997) (Rice, C.J.).

As indicated in its prior Decision, it is clear that Defendant's production activities, *i.e.,* the manufacturing of brass molds and castings, occur only in Union City, Ohio. Thus, if the Court were to employ only the "place of activity" test, Defendant's undisputed evidence would indicate that its principal place of business is located in Ohio. Accordingly, the only outstanding factual issue is the location of Defendant's "nerve center." The Court must then determine, as a matter of law, the location of Defendant's principal place of business.

■ In support of its claim that its principal place of business is located in Union City, Ohio, Defendant has presented evidence that it operates through a single facility, located at 305 S.E. Deerfield Road in Union City, Ohio (Harwell Aff. ¶ 2). Union City's Vice President and General Manager, Charles Harwell, states in his affidavit that the company has operated exclusively at that location since the corpo-

---

**2.** Neither party has argued that this case involves a federal question, thus allowing the

Court to exercise subject matter jurisdiction under 28 U.S.C. § 1331.

ration was founded in 1991, and that it was operating at its Union City location when Plaintiff's injuries occurred on November 2, 1999 (*id.* ¶ 2–3). In its reply memorandum, Mr. Harwell provides a supplemental affidavit, which indicates that all of its personnel and payroll records are located in Union City, Ohio, and that the company pays taxes as a corporation doing business in Ohio (Doc. # 8, Harwell Supp. Aff. ¶ 4–5).

Defendant further provides the affidavit of Laurence F. Ross, the President and sole shareholder of Union City Non Ferrous, Inc. (Doc. # 14, Ex. A). In that affidavit, Mr. Ross indicates that he used his business address in Washington, Pennsylvania, as the corporate address so that he would receive all legal notices regarding the corporation (*id.* ¶ 6). He states, however, that he is not actively involved in the day-to-day management of the production facility, and that Mr. Harwell is responsible for such (*id.* ¶ 7).

In his memorandum regarding Defendant's Motion to Dismiss, Plaintiff had responded that Union City's corporate address, according to records of the Indiana Secretary of State, is listed as 259 South College Street, Washington, Pennsylvania, and that the principals of the corporation, namely the President and the Secretary, are also located at that Pennsylvania address (Doc. # 5, Ex. B). In his supplemental memorandum (Doc. # 9), Plaintiff had attached a copy of Defendant's Articles of Incorporation, filed in Indiana. That document indicates that Union City's principal office is located at 86 Woodside Drive, Washington, Pennsylvania (Doc. # 9, Ex. A, Art. IV § 2).

In response to Defendant's Motion to Reconsider, Plaintiff has submitted Defendant's Response to Plaintiff's First Set of Interrogatories (Doc. # 26, Ex. A) and Defendant's Bylaws. According to the Interrogatories, Defendant's sole corporate director, Mr. Ross, is located in Washington, Pennsylvania. The corporate minute book, which is kept by Defendant's Treasurer, Linda Kidder, is maintained at that location. Defendant's corporate officers, with the exception of its Vice President and General Manager (Mr. Harwell), are also located there. The financial records are maintained at both the Ohio and Pennsylvania addresses. Defendant's bank account is located in Pittsburgh, Pennsylvania. All of Defendant's employees reside and work in Ohio.

Upon review of the evidence, it is clear that Union City Non Ferrous's corporate headquarters are located in Washington, Pennsylvania. As stated above, its corporate director and the majority of its corporate officers reside in Washington, Pennsylvania. Although Mr. Ross states that he does not oversee the day-to-day operations of the Ohio facility, as the sole Director and as President of the company, he is vested with substantial control over its policies and general operations. The corporation's minute books, financial records, and bank accounts are located in Pennsylvania. Thus, the Court concludes that the corporation's "nerve center" is located in the State of Pennsylvania.

 Applying the Sixth Circuit's "total activity test" herein, the Court is presented with the situation where the corporation's administrative authority is located in one State (*i.e.,* Pennsylvania), while its sole manufacturing activities are performed in another (*i.e.,* Ohio). In such situations, the principal place of business is generally the State of its operations. *NCR Corp., supra; Gafford,* 997 F.2d at 162; *see also, e.g., Gadlin v. Sybron Internat'l Corp.,* 222 F.3d 797, 799 (10th Cir. 2000) (corporation's principal place of business was in Colorado, despite evidence from corporation's president that company headquarters were located in California,

when the evidence indicated that the vast majority of corporation's employees worked in Colorado and that its manufacturing, production, and distribution facilities were located there). Defendant's operations are conducted in Ohio, and its employees are located in this State. The fact that Defendant indicated on its Foreign Corporation Application for License in Ohio (Doc. # 26, Ex. C) that its principal office is located at 259 S. College Street in Washington, Pennsylvania, merely reflects that its corporate headquarters are at that location. It is not dispositive regarding the location of Defendant's principal place of business for purposes of diversity jurisdiction. Likewise, the fact that Defendant registered in Ohio as a foreign corporation merely indicates that it was incorporated in another State. Ohio Rev.Code § 1701.01(B)(defining "foreign corporation" as "a corporation for profit formed under the laws of another state."); *see Howery v. Allstate Ins. Co.*, 243 F.3d 912, 921 (5th Cir.2001). Defendant's status as a foreign corporation has no bearing on this Court's determination of its principal place of business. Accordingly, in light of the facts that all of Defendant's foundry operations occur in the State of Ohio, that all of its employees are located there, that it maintains financial records at its Ohio site, and that all of its day-to-day management occurs there, the Court concludes Union City's principal place of business is located in the State of Ohio.

■ At this juncture, the Court notes that Plaintiff has requested an extension of the discovery deadline, in order for him to obtain more accurate information about the activities in Pennsylvania and Ohio (Doc. # 35).[3] He indicates that the deposition testimony of Mr. Harwell and of the company's secretary and office manager

differ from their affidavits. Specifically, Plaintiff indicates that Mr. Harwell, who resides in Indiana, has been in Union City, Ohio, only three times during the entire year and for only three hours each, and that he has not had telephone contact with the facility in Ohio more than once per month. Plaintiff further asserts that all bills are submitted for payment to Washington, Pennsylvania, that payroll is done at that location, and that all checks are written from there. Thus, Plaintiff has sought additional discovery to establish that the principal place of business is located in Washington, Pennsylvania.

Even if the Court were to permit Plaintiff to conduct discovery about administrative activities that occur in Washington, Pennsylvania, the additional evidence would merely supplement, not contradict, the current evidence in support of the Court's conclusion that the administrative activities and, thus, the nerve center of the company is located in the State of Pennsylvania. Plaintiff has not suggested that he might acquire evidence that Union City conducts operations in a location other than Union City, Ohio. In other words, Plaintiff has not suggested that he anticipates obtaining evidence to contradict this Court's conclusion that Union City is a company with nerve center in one State (*i.e.*, Pennsylvania) and its sole operations in another (*i.e.*, Ohio). Accordingly, the Court concludes that additional discovery would not alter this Court's ruling. Plaintiff's Motion to Extend Discovery Deadline (Doc. # 35) is OVERRULED.

■ Because Defendant's principal place of business is located in Ohio, it is a citizen of this State, for purposes of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Since Plaintiff is also a citizen of

---

**3.** The Court notes that Plaintiff has filed this Motion more than five months after the July 27, 2001, deadline for discovery on the issue

of this Court's subject matter jurisdiction. However, the Court will not treat this delay as dispositive of the Motion.

the State of Ohio, the parties are not diverse, and this Court lacks subject matter jurisdiction over this action. Accordingly, Defendant's Motion for Reconsideration of the Court's April 24, 2001 Decision (Doc. # 14), which overruled Defendant's Motion to Dismiss, for lack of subject matter jurisdiction, is SUSTAINED.

For the foregoing reasons, Defendant's Motion for Reconsideration (Doc. # 14) is SUSTAINED. Plaintiff's action is hereby DISMISSED, for lack of subject matter jurisdiction. Judgment is to enter accordingly.

WHEREFORE, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.