**STATE AUTO FINANCIAL ACQUISITION CORP., et al., Plaintiffs,**

v.

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, et al., Defendants.**

No. C2–03–751.

United States District Court, S.D. Ohio, Eastern Division.

Oct. 15, 2003.

L. Andrew Brehm, Schuyler, Roche & Zwirner, PC, Chicago, IL, Stephen Eric Chappelear, Hahn, Loeser & Parks, Columbus, OH, for Plaintiffs.

John Wolcott Zeiger, Stuart G. Parsell, Steven Walter Tigges, Zeiger & Carpenter, Columbus, OH, Quintin Franc Lindsmith, Bricker & Eckler, Columbus, OH, Laura Goodman Kuykendall, Thomas Brennan Ridgley, Vorys, Sater, Seymour & Pease, David Warren Alexander, Squire, Sanders & Dempsey, Columbus, OH, for Defendants.

### OPINION AND ORDER

FROST, District Judge.

This matter is before the Court on Defendants State Automobile Mutual Insurance Company's ("SAM") and State Auto Financial Corporation's ("STFC") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 7); Motion to Dismiss of Defendants David J. D'Antoni and S. Elaine Roberts (Doc. # 8); Motion of Robert H. Moone, John R. Lowther, Steven J. Johnston, Urlin G. Harris, Jr., Ramon L. Humke, and Marion D. Houk to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 9); Motion to Dismiss for Lack of Jurisdiction by Paul W. Huesman (Doc. # 10); Motion to Dismiss by Richard K. Smith (Doc. # 15); Motion to Dismiss for Lack of Subject Matter Jurisdiction by Defendants Dennis R. Bank, James E. Kunk, Paul J. Otte, and Marsha P. Ryan (Doc. # 18); and, Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Greald L. Bepko, Dennis R. Blank, James E. Kunk, Paul J. Otte, and Marsha P. Ryan (Doc. # 54); Plaintiff's Memorandum in Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 22); and, Reply Memorandum of Defendants State Automobile Mutual Insurance Company, State Auto Financial Corporation, Robert H. Moone, John R. Lowther, Steven J. Johnston, Urlin G. Harris, Jr., Ramon L. Humke, and Marion D. Houk, and Paul W. Huesman In Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 41).

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction, as submitted by all Defendants is **GRANTED**. This case is hereby **DISMISSED**.

### I. NATURE OF PROCEEDINGS

Plaintiffs in this case are Gregory Shepard ("Shepard"), an Illinois resident, and his wholly owned corporation State Auto Financial Acquisition Corporation, now known as STFC Acquisition Corporation ("SAFAC"). Defendants are two Ohio corporations, SAM and STFC, and their directors. Each of the director-defendants also resides in Ohio with three exceptions: (1) Defendant Humke resides in Indiana; (2) Defendant Smith resides in Michigan; and, (3) Defendant Houk resides in Kansas. (Def. Mot. at 2). Defendants have moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1).

It is uncontested by the parties that the sole basis for subject matter jurisdiction in this case is diversity jurisdiction. The citizenship of the Defendants is not in dispute, nor is the citizenship of Plaintiff Shepard. Additionally, both parties agree that because SAFAC is incorporated in Illinois, SAFAC is a citizen of Illinois.

Defendants' claim, however, that SAFAC is also an Ohio citizen for diversity purposes because SAFAC's "principal place of business" Ohio. If true, complete diversity between all the plaintiffs and all the defendants would be destroyed and the Court would not have jurisdiction over the

case. Conversely, plaintiffs argue that complete diversity of citizenship exists between the parties because SAFAC's principal place of business is Illinois, not Ohio. Thus, the specific issue before the Court is whether SAFAC's principal place of business is Illinois or Ohio.

## II. *FACTS*

SAFAC is incorporated in the state of Illinois. Plaintiff Shepard is the sole owner, shareholder, officer, and director of SAFAC. Shepard lives and works in Bloomington, Illinois. (Pl. Mem. Opp'n. at 2.) Shepard describes his corporation and it purpose:

> [SAFAC] is a newly incorporated Illinois corporation organized in connection with the Offer and Proposed Merger and has not carried on any activities other than in connection with the Offer and the Proposed Merger.

(Offer to Purchase at 16, DeMarco Aff. Ex. 2, filed Sept. 4, 2003).

SAFAC's corporate "headquarters" is a "mail drop" type office located at 980 North Michigan Avenue, Chicago, Illinois. (Shepard.Decl.¶ 13.) In connection with SAFAC's tender offer, the services of Schuyler, Roche, & Zwirner, a Chicago-based law firm have been utilized. (Shepard Decl. ¶ 7.) The investment banking services of Jeffries & Company, with offices in Los Angeles, California have also been used in connection with the SAFAC tender offer. (Shepard Decl. ¶ 10.)

According to the tender offer proposed by SAFAC, if STFC stockholders elect to tender their shares in response to the tender offer, they are to make that tender by sending the Letter of Transmittal to Mellon Investor Services, L.L.C., at its offices in either New York or New Jersey. (Shepard Decl. ¶ 11.) SAFAC's tender offer materials also include a toll-free number where stockholders can contact Mellon Investor Services with questions regarding the offer, Shepard believes the personnel manning the toll-free number are based in the New York City metropolitan area. (Shepard Decl. ¶ 12.)

In connection with the tender offer, SAFAC has filed an "Acquiring Person Statement" with the Ohio Division of Securities pursuant to Ohio Rev.Code § 1707.041. (Def. Mot. at 7.) SAFAC delivered the Acquiring Person Statement and other tender offer materials to STFC's executive offices in Columbus, Ohio, pursuant to Ohio Rev.Code § 1701.831. (Def. Mot. at 8.) SAFAC's Acquiring person Statement and tender offer was discussed via telephone, e-mail, and exchange of correspondence with Michael Miglets, control bid attorney for Ohio Division of Securities. (Shepard Decl. ¶ 16).

## III. *STANDARD OF REVIEW*

■ With a motion to dismiss pursuant to Rule 12(b)(1), the moving party is challenging the court's subject matter jurisdiction. The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986). Thus, if the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976).

■ When considering a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes. *See Rogers v. Stratton Industries, Inc., supra* at 915 (citations omitted). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life*

*Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *See Rapier v. Union City Non–Ferrous, Inc.,* 197 F.Supp.2d 1008, 1012 (S.D.Ohio 2002).

■ For purposes of establishing the diversity requirement of subject matter jurisdiction, a corporation can be a citizen of two states: (1) its state of incorporation; and (2) the state of its principal place of business. *See Gafford v. General Elec. Co.,* 997 F.2d 150, 161 (6th Cir.1993) (citing 28 U.S.C. §§ 1332(c)). By common sense and by law, a corporation can have only one *principal* place of business for purposes of establishing its state of citizenship. *Id.* at 161 (citing *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 406 (5th Cir.1987)); *see* 28 U.S.C. §§ 1332(c) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and *the* State where it has its principal place of business") (emphasis added).

■ The question of a corporation's principal place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations. *Gafford v. General Elec. Co.,* at 161 (citing *Northeast Nuclear Energy Co. v. General Elec. Co.,* 435 F.Supp. 344, 345 (D.Conn. 1977)). To determine, as a matter of law, the location of Plaintiffs' principal place of business, the Court must use the "total activity test," adopted by the Sixth Circuit in *Gafford, supra.* As Judge Rice explained in *Rapier, supra;* "[t]he total activity test is a combination of the 'nerve center test,' which emphasizes the situs of corporate decision-making authority and overall control, and the 'place of activity test,' which emphasizes the location of the company's production and service activi-

ties." *Id.* at 1013 (citing *Gafford,* 997 F.2d at 162).

■ Under the total activity test, the Court must consider all relevant factors and weigh them in light of the facts of the case. *Gafford, supra* at 163. While each situation is fact-specific, certain generalizations have been made. *See Rapier, supra* at 1013. These generalizations were canvassed in *J.A. Olson Co. v. City of Winona,* 818 F.2d 401 (5th Cir.1987), in a section which the Sixth Circuit excerpted in its opinion in *Gafford. First,* the principal place of business of a far-flung corporation will generally be its nerve center. *Olson,* 818 F.2d at 409 (citation omitted). *Second,* the principal place of business of a corporation with significant administrative authority and activity in one State and lessor executive offices but principal operations in another is generally the district of the former. *Id.* (citation omitted). *Third,* the principal place of business of a corporation with its corporate headquarters in one State and its single activity in another State will generally be in the State of its operations. *Id.* (citation omitted). *NCR Corp. v. Gartner Group, Inc.,* 1997 WL 1774881 (S.D.Ohio Sept.15, 1997).

The ultimate question is not which test to apply, but rather which consideration, on the basis of the totality of the facts, predominates. Thus, the Court will take into consideration all relevant factors and weigh them in light of the facts of this case. *See Gafford, supra* at 163.

## IV. *DISCUSSION*

■ Plaintiffs suggest that SAFAC should be considered a "far-flung corporation" for purposes of the Court's "total activity" analysis. The principal place of business for a far-flung corporation is generally its nerve center. A business's "nerve center" is its situs of corporate decision-making and overall control. *See*

*Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 864–65 (S.D.N.Y.1959). SAFAC then argues that, as a farflung corporation, its nerve center is Illinois because this is the state where Plaintiff Shepard, the corporation's sole officer decision maker resides.

Plaintiffs assert that the business of SAFAC is national in scope because SAFAC's tender offer is being disseminated to all STFC stockholders throughout the United States (and possibly foreign companies as well). (Shepard Decl. ¶ 3.) Plaintiff's also emphasize that STFC, the target company of SAFAC's offer, is publicly traded on the NASDAQ stock market. (Shepard Decl. ¶ 3.) Additionally, because SAFAC's tender offer has involved the services of persons and/or companies on the East Coast, the West Coast, and the Mid–West, Plaintiff's submit that SAFAC has employees and business activities all over the country. (Pl. Mot. Opp'n. at 5.) These facts do not make SAFAC a far-flung corporation.

A common element to every far-flung corporation, as determined by various courts, is the corporation's engagement in business activities carried out in different states. In *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N.Y. 1959), the court explained; "where the corporation is engaged in farflung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Id.* at 865. In *Scot Typewriter,* the defendant corporation, Underwood, was a lead manufacturer of typewriters and other business supplies. *Id.* Underwood carried out this purpose all over the country; Underwood manufactured typewriters and business machines in Connecticut, office and related supplies in New Jersey, and

missile and radar components in California. All of these products were distributed and serviced in branch offices across the United States. Underwood's executive offices were located in New York. *See Scot Typewriter Co., supra.* It was these facts which led the *Scot Typewriter* court to conclude that Underwood's principal place of business was where the corporation had an office where "all of its business was under the supreme direction and control of its officers." *Id.* at 865.

Similarly, in *Gafford, supra,* the Sixth Circuit Court of Appeals had occasion to characterize a corporation as "far-flung." The issue before the *Gafford* court was whether the principal place of business of General Electric Company ("GE") was properly determined by the district court to be GE's "nerve center," New York. Gafford argued that GE's principal place of business was Kentucky, given the size of the GE facility in Kentucky which encompassed over 9000 employees. *Id.* at 161.

Using the "total activity" test, however, the court concluded that, "[g]iven GE's basic corporate structure, it was not clearly erroneous to conclude that the significant administrative activity in New York justified finding New York to be GE's principal place of business." *Gafford v. General Elec. Co.* at 163. The Court reasoned; "[t]here are many states in the United States in which General Electric has extensive manufacturing operations". Several of those states contain General Electric business operations that generate more revenue for General Electric than [Kentucky]. *Id.* at 163.

The very purpose of SAFAC's incorporation contemplates SAFAC "doing business" in, at the most, two states—Ohio and Illinois. As stated by Shepard, SAFAC was created to make a tender offer ("Offer") to acquire 8,000,000 outstanding shares of STFC common stock. In turn,

the purpose of SAFAC's Offer is to "enable Shepard and the Acquiring Person [SAFAC] to acquire control of the Company [STFC]." (August 20, 2003 Acquiring Person Statement at 2.) A condition of SAFAC's Offer is also to consummate a merger with and into SAM:

> [t]he Acquiring Person [SAFAC] currently intends, as soon as practicable following consummation of the Offer, to seek to have the Acquiring Person consummate a merger with and into State Automobile Mutual Insurance Company with State Automobile Mutual Insurance Company continuing as the surviving corporation.

(August 20, 2003 Acquiring Person Statement at 2.) Thus, SAFAC's purpose can be summarized as: (1) make a tender offer to STFC shareholders; (2) enable Shepard to gain control of STFC; and, (3) merge SAFAC with and into SAM, with SAM being the surviving company. The end result being the dissolution of SAFAC and both STFC and SAM controlled by Shepard.

SAFAC undeniably has business activity in Illinois. Shepard, the creator, owner, and single control person for SAFAC is a citizen of Illinois. Shepard, from Illinois, is orchestrating the tender offer. SAFAC's purpose for the proposed Offer, including the merger with SAM, is for the benefit of Shepard from the state of Illinois.

SAFAC undeniably has business activity in Ohio. The corporation that SAFAC seeks to acquire (STFC) is incorporated in Ohio and principally does business in Ohio. The company SAFAC seeks to merge with (SAM) is an Ohio company. In the course of its business, SAFAC has engaged in activities in Ohio. SAFAC has filed with the Ohio Division of Securities, and been in contact with this agency to ensure compliance with Ohio law.

That SAFAC has business activity in both Illinois and Ohio does not make SA-FAC a "far-flung" corporation. A far-flung corporation is a corporation engaged in activities "dispersed to the point that no place in which the corporation conducts operations or activities can be denoted principal." *J.A. Olson Co., supra* at 407. Unlike the Underwood corporation or GE, SAFAC does not manufacture and distribute its products throughout the country. Nor does SAFAC have offices, stores, employees, or other business activity in states other than Illinois and Ohio. SAFAC's activities are simply not dispersed throughout the country.

Plaintiffs' argument that SAFAC is a far-flung corporation because it is engaged in making a national tender offer is not well-taken. Courts have determined that a corporation is "far-flung" only where the corporation is a large and complex enterprise whose substantial activities are so dispersed that the company does not conduct the predominance of its business in any single state. *See J.A. Olson Co., supra* at 407. Corporate activities that qualify corporations "far-flung" are include employing 260,000 people and having stores in 49 states. *See Arellano v. Home Depot U.S.A., Inc.*, 245 F.Supp.2d 1102, 1107–08 (S.D.Cal.2003). A corporation that operates a multi-state grocery store chain, such as Kroger, is also a far-flung corporation. *See McCabe v. Henpil, Inc.*, 889 F.Supp. 983, 990 (E.D.Tex.1995). That SAFAC made a tender offer, even one that is natural in scope, is not analogous to the above facts, nor does the tender offer suffice to qualify SAFAC as a "large and complex enterprise."

Moreover, while Plaintiffs emphasize that several professionals throughout the United States have been involved in the production of SAFAC's tender offer, the location of these third parties is not relevant to the determination of SAFAC's principal place of business. The investment

banking company, legal counsel, investment printer, and investment advising firm, are all separate legal entities.[1] *See Bogusz v. MPW Container Management Corp. of Michigan,* 2002 WL 373465, *2 (E.D.Mich.2002) (stating the general rule that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business).

The general rule that a corporation's principal place of business is the corporation's nerve center only applies to far-flung corporations. "[s]ince *Scot,* the 'nerve center' test appears to have been limited to similar facts, that is to 'corporation[s] engaged in far-flung and varied activities which are carried on in different states.' " *J.A. Olson Co., supra* at 407 (citing *Scot,* 170 F.Supp. at 865.) *See, e.g., Lugo–Vina v. Pueblo International, Inc.,* 574 F.2d 41, 43 n. 2 (1st Cir.1978) ("nerve center" test most appropriate for holding company); *Spector v. Rex Sierra Gold Corp.,* 227 F.Supp. 550, 551 (S.D.N.Y.1964) ("nerve center" test inapposite to company engaged in one activity in one state). Therefore, because SAFAC is not a far-flung corporation, the "nerve center" test has no predominate weight in the Court's analysis of SAFAC's principal place of business.

 While the Court declines to adhere to Plaintiffs' characterization of SAFAC as a "far-flung corporation," the Court also declines to accept Defendants' characterization of SAFAC. Defendants argue that SAFAC is a corporation headquartered in one state (Illinois) with its single business activity in another state (Ohio). When presented with this type of corporation, the general rule is that the principal place of business is where the corporation's single place of activity is, regardless of where the nerve center might be. Thus, Defendant's argues that this general rule should apply to SAFAC, making SAFAC's principal place of business Ohio.

In support of the proposition that SAFAC's sole activity takes place in Ohio, Defendants emphasize that SAFAC's "purpose" is in Ohio. (Def. Mot. at 6–7.) While the Court agrees that SAFAC's overarching goal is to provide Shepard control over STFC and SAM, *see* discussion *infra* p. 9, and that the attainment of this goal is Ohio-based, the Court cannot disregard SAFAC's Illinois activity in pursuit of this goal.

Shepard, SAFAC's single officer, director, and owner is in Illinois. Legal counsel for Shepard and SAFAC is in Illinois. Activities in furtherance of SAFAC's tender offer have occurred in Illinois. In light of this, the Court cannot conclude that SAFAC's sole business activity is in Ohio. The general rule that where a corporation's headquarters are in one state and a corporation's single activity is in a different state, the corporation's principal place of business is the "center of activity" does not apply to SAFAC.

From the facts presented, the Court concludes that SAFAC does not fit exclusively into any one of the three "general rules regarding the determination of a particular corporation's principal place of business." *See Gafford, supra* at 162. Although the Court is able to determine that SAFAC is not a far-flung corporation, the facts do not illustrate that SAFAC is either a corporation with "significant administrative authority and activity in one state and lesser executive offices but principal operations in another state" or a corporation "with its headquarters in one State

---

1. It does not matter whether these entities was hired by Shepard, before the incorporation of SAFAC, or by SAFAC itself. Neither situation impacts the conclusion that each and every one of these businesses is a separate legal entity from SAFAC.

and its single activity in another state." *See J.A. Olson Co., supra.*

SAFAC is not within any one of these general categories because SAFAC is not engaged in "business activity" in the traditional sense. SAFAC does not manage anything, manufacture, produce, nor distribute anything. SAFAC has existed as a corporation for less than two months, and is designed to exist only until merged with SAM.

SAFAC has no real corporate assets. SAFAC does not own any property, nor does SAFAC employ any persons except its sole owner and operator, Shepard. Besides a "mail drop" office in Illinois, SAFAC has no primary administrative office, nor any "lesser executive offices" to speak of.

Finally, SAFAC does not participate in any economic industry. SAFAC is not a service provider, nor does SAFAC manufacture, produce, distribute, or sell goods. SAFAC's only business activity is done in furtherance of SAFAC's attempt to acquire STFC. Because SAFAC has no "operations" or "day to day" business it conducts in either Ohio nor Illinois, the general rules focusing on a corporation's "place of activity" as its principal place of business are not helpful.

Thus, the Court turns to the task of applying the Sixth Circuit's "total activity" test to SAFAC's unique situation. The Court will consider all the relevant factors, including SAFAC's "nerve center" and "place of activity," and weigh them in light of the facts of this unique case. Paramount to the Court's analysis shall be "the character of the corporation, the kind of business in which it is engaged, and the situs of its operations." *Gafford,* 997 F.2d 150, 159 (citing *Northeast Nuclear Energy Co. v. General Elec. Co.,* 435 F.Supp. 344, 345 (D.Conn.1977)).

Court finds the following facts significant: (1) SAFAC was incorporated to offer to purchase STFC's outstanding shares of common stock, for the purpose of Shepard gaining control over STFC; (2) a condition of SAFAC's offer is the merger of SAFAC with and into SAM, with SAM as the surviving company; (3) Shepard, SAFAC's sole control person, lives and works in Bloomington, Illinois; (4) STFC and SAM are Ohio companies; (4) SAFAC's tender offer is regulated by the Ohio Division of Securities, SAFAC has filed Form 041 with the Department pursuant to Ohio Rev.Code § 1707.041; (5) in connection with the tender offer SAFAC has delivered an Acquiring Person Statement and other tender offer materials to STFC's executive offices, pursuant to Ohio Rev. Code § 1701.831; (5) SAFAC has attempted to gain the Ohio Department of Insurance's approval for its proposed merger with SAM; (6) SAFAC's legal counsel is located in Chicago, Illinois; (7) the Acquiring Person Statement and other requirements of the Ohio "control bod" statutes were prepared by SAFAC's legal counsel in Chicago; and, (8) communications with the Ohio Department of Insurance on behalf of SAFAC was engaged in by SAFAC in Chicago.

Considering the above facts as they relate to SAFAC's character, the type of business its engaged in, and place of SAFAC operations, the Court concludes that SAFAC's principal place of business is Ohio. This is because SAFAC was created for the sole purpose of providing Shepard a means of acquiring control of Ohio companies SAFAC and SAM. The facts and circumstances surrounding SAFAC make clear to the Court that the purpose for which SAFAC was incorporated is clearly the factor to be weighed most heavily when analyzing SAFAC's total activity.

The Court focuses the "total activity" test on the character of SAFAC because this factor, above all else, provides the

most accurate information about the corporation's principal place of business. SAFAC has existed for less than two months. SAFAC will cease to exist if, and when, the conditions of SAFAC's tender offer are met. During its two month existence, SAFAC's only "operations" have been to procure the tender offer for STFC's outstanding shares of common stock. The fact that the "headquarters" for these "operations" is Illinois is of little consequence to SAFAC's overall corporate scheme, as seen by the fact that many of these "operations" having been done in Ohio (filing with the Ohio Division of Securities, Providing an Acquiring Person Statement to STFC pursuant to Ohio law, and trying to obtain the Ohio Department of Insurance's approval for the corporation's merger with Ohio company SAM).

Likewise, the sole "business" that SAFAC is engaged in is the "business" of offering to acquire STFC shares. A business activity undertaken to allow SAFAC to gain control of SAFAC, in order to merge SAFAC with and into SAM. SAFAC has no other day to day operations, in fact if SAFAC merges into SAM, SAFAC will cease to exist.

Furthermore, SAFAC has no employees other than Shepard. Other than a mail drop in Chicago, SAFAC has no corporate offices. Shepard admits that no physical operations are conducted from the Chicago office address. (Pl.Mem.Opp,n. n. 2.) SAFAC does not engage in traditional business activity of producing, manufacturing, distributing, or selling goods. Thus, it is nonsensical to afford significant weight to SAFAC's "place of operations" or SAFAC's "type of business" when determining SAFAC's principal place of business.

Weighed in light of the facts of this case, SAFAC's principal place of business is best determined by considering the character of SAFAC and its purpose. STFC is a temporary corporation, created by Shepard to make a tender offer to STFC's shareholders and to merge with SAM. In Amendment 7 to Schedule 13D filed on behalf of Gregory M. Shepard, SAFAC and its business activity is described:

> This statement relates to the offer by State Auto Financial Corporation, an Illinois corporation ("Offeror"), a wholly owned company of Gregory M. Shepard, an Illinois individual ("the Filing Person"), to purchase 8,000,000 of the outstanding shares of common stock...on the terms and subject to the conditions set forth in the Offer to Purchase, dated August 20, 2003...and the related Letter of Transmittal (which, as amended from time to time, together constitute the "Offer").
>
> The purpose of this Offer and the proposed second-step merger, pursuant to which the Offeror will merge with and into [SAM] with [SAM] continuing as the surviving corporation (the "Proposed Merger"), is to enable Offeror and filing Person to acquire control of STFC and its subsidiaries and affiliates.

(Shepard Sched. 13D, Amd. 7, Item 4).

The purpose of SAFAC, and the reason that SAFAC does any business at all, is to obtain control of two Ohio companies. The only activities that SAFAF engages in, whether conducted by SAFAC or its legal counsel and whether in Illinois or Ohio, are activities to further SAFAC's goal of taking control of the Ohio companies. SAFAC's principal place of business is Ohio.

## V. CONCLUSION

Because SAFAC's principal place of business is Ohio, and most defendants are citizens Ohio, there is not complete diversity between the parties. The Court does not have subject matter jurisdiction over the instant case. Therefore, Defendants' motion(s) to dismiss based on lack of subject matter jurisdiction is **GRANTED**.

This case shall hereby be **TERMINAT-ED** from the Court's docket, all pending motions shall be **DISMISSED** as moot.

**IT IS SO ORDERED.**