**RESTACO, INC., et al., Plaintiff,**

v.

**AMI REICHERT, LLC, et al., Defendant.**

**No. 3:04 CV 7675.**

United States District Court, N.D. Ohio, Western Division.

Feb. 15, 2005.

Erik G. Chappell, Lyden, Liebenthal & Chappel, Toledo, OH, for Plaintiffs.

Daniel V. Smith, Howard M. Borin, Schafer & Weiner, Bloomfield Hills, MI, Jeffrey Swick, Roetzel & Andress, Columbus, OH, Julie A. Douglas, Roetzel & Andress, Toledo, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

KATZ, District Judge.

This matter is before the Court on Defendant AMI Reichert's motion to dismiss for lack of subject-matter jurisdiction (Doc. No. 12). Plaintiff has filed a response (Doc. No. 13). The Court heard oral argument and witness testimony on February 11, 2005. For the reasons stated below, AMI Reichert's motion to dismiss is granted.

### BACKGROUND

Plaintiff Restaco Inc., formerly known as Reichert Stamping Company ("Reichert Stamping"), sold its business assets to Defendant AMI Reichert, LLC ("AMI Reichert") on April 28, 2004. The president of AMI Reichert lived and maintained a business office in Paris, Kentucky. According to Plaintiff Robert F. Reichert ("Mr.Reichert"), former president of Reichert

Stamping, AMI Reichert's stated intention at the time of the sale was to make Reichert Stamping profitable and to bring in stamping work from other companies that AMI Reichert's parent company, American Metals Industries, Inc. ("AMI"), was purchasing at the same time. AMI Reichert hired Dennis "Pete" Peterson, who had been living in Indiana, to come to Toledo, Ohio to run the Reichert Stamping plant.

The Plaintiffs, which include Reichert Stamping, Mr. Reichert, and the Reichert Family Limited Partnership ("the RFLP"), filed this lawsuit on October 25, 2004, alleging that AMI Reichert converted a payment from Defendant Autoliv ASP, Inc. that was to be placed into escrow for the benefit of Reichert Stamping, that AMI Reichert was in breach of a lease agreement with the RFLP, and that AMI Reichert breached a consulting services contract it entered into with Mr. Reichert. Shortly after Plaintiffs filed their complaint, AMI Reichert closed its plant. The company sold the last of its assets at auction on December 8, 2004.

Plaintiffs, all citizens of Ohio, premise federal jurisdiction solely on diversity of citizenship. AMI Reichert has moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) because it claims it is also a citizen of Ohio and the parties are therefore not diverse. The Court held a hearing on February 11, 2005, at which Robert F. Reichert testified for Plaintiffs and Pete Peterson testified for AMI Reichert.

### Discussion

In the face of a Rule 12(b)(1) challenge to the Court's subject-matter jurisdiction, the Plaintiff bears the burden of establishing, by a preponderance of the evidence, that federal subject-matter jurisdiction exists. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986). When federal jurisdiction is challenged, the party asserting it must submit evidence establish-

ing its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). In resolving a challenge to its subject-matter jurisdiction, the Court may resolve factual disputes. *Rogers*, 798 F.2d at 915. The Court has "wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The Court may consider such evidence without turning the motion into a Rule 56 motion for summary judgment. *Id.*

■ Federal district courts are courts of limited jurisdiction and, absent a federal question, may only entertain suits in which the amount in controversy exceeds $75,000 and in which the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). For jurisdictional purposes, a corporation may be a citizen of up to two states: the state of its incorporation and the state of its principal place of business ("PPB"). *Safeco Ins. Co. v. City of White House, Tenn.*, 36 F.3d 540, 544 (6th Cir.1994).

■ A corporation can have only one principal place of business for the purpose of establishing its state of citizenship. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 161 (6th Cir.1993). The location of a corporation's PPB is a question of fact that the Court determines on a case-by-case basis, taking into account such factors as the character of the corporation, its purposes, the kind of business it engages in, and the situs of the operations. *Id.* Under the "time of filing" rule, "all challenges to subject-matter jurisdiction premised on diversity of citizenship [are measured] against the state of facts that existed at the time of filing...." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 124 S.Ct. 1920, 1924, 158 L.Ed.2d 866 (2004). " 'Where there is no change of party, a jurisdiction depending on the con-

dition of the party is governed by that condition, as it was at the commencement of the suit.'" *Id.* at 1926 (quoting *Conolly v. Taylor*, 27 U.S. 556, 2 Pet. 556, 7 L.Ed. 518 (1829)).

The Sixth Circuit has adopted the "total activity test" for determining corporate PPB. *Gafford*, 997 F.2d at 163. This test combines the "nerve center test," which "emphasizes the situs of corporate decision-making authority and overall control," with the "place of activity test," which "emphasizes the location of production activities or service activities." *Id.* at 162. The Court takes all relevant factors into consideration and weighs them in light of the facts of the case. *Id.* at 163.

While each situation is fact specific, certain generalizations have been established under the total activity test:

> [T]he principal place of business of a far-flung corporation will generally be its nerve center, the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former, and the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations.

*Id.* at 162 (quoting *J.A. Olson Co. v. Winona*, 818 F.2d 401, 409 (5th Cir.1987)) (internal citations omitted); *Rapier v. Union City Non–Ferrous, Inc.*, 197 F.Supp.2d 1008, 1013 (S.D.Ohio 2002).

In *Rapier*, the corporation at issue fell into the latter category: its · corporate headquarters was in Pennsylvania, but its sole manufacturing operation was in Ohio. *Rapier*, 197 F.Supp.2d at 1013. The company's personnel and payroll records were located at its facility in Ohio, it paid taxes as a corporation doing business in Ohio, all of its employees were located in Ohio, and the person responsible for the day-to-day operation of the manufacturing facility was located in Ohio. *Id.* at 1013–15. The corporation's corporate address was Washington, Pennsylvania, its bank account was in Pittsburgh, its minute books and financial records were in Pennsylvania, and its president, who was not involved in the day-to-day management of the plant, was located in Pennsylvania. *Id.* at 1014. Based on this, the court found the corporation's "nerve center" was in Pennsylvania. Faced with this situation, in which the corporation's administrative authority was in Pennsylvania but its sole manufacturing activity took place in Ohio, the court found the principal ·place of business to be Ohio. *Id.* at 1015.

■ The facts of the instant case are quite similar to those in *Rapier*. Here, both Robert Reichert and Pete Peterson testified that on October 25, 2004, the date the complaint was filed and, therefore, the date on which the Court must assess the status of the parties for diversity of citizenship purposes, all of AMI Reichert's employees were working in Ohio and the company was conducting a manufacturing operation solely within the state of Ohio. Ohio is the only state in which AMI Reichert was registered to do business, and the company claims Toledo, Ohio as its PPB in its articles. While the company president made major decisions in Paris, Kentucky, the plant manager, Pete Peterson, made decisions concerning the day-to-day operations of the company in Toledo, Ohio. Mr. Peterson had relocated to Ohio and was living in Toledo. He believed his mission was to make AMI Reichert profitable, and was considering relocating his family to Toledo from Indiana. Mr. Peterson testified that on October 25, 2004, all operational books and records were kept in Toledo, Ohio. While Mr. Reichert pointed out that some processing of AMI Reichert's prod-

ucts was done in other states on AMI Reichert-owned equipment, that processing was done by other corporate entities, and does not amount to operation outside the state of Ohio by AMI Reichert, which was only licensed to conduct business in this state. As in *Rapier*, while some of the defendant corporation's administrative authority was located in another state, its sole manufacturing operation was located in Ohio, and its day-to-day management took place in Ohio. Here, as in *Rapier*, the Defendant's PPB is Ohio.

The Plaintiffs point out that shortly after the complaint in this action was filed, AMI Reichert closed its plant and sold its assets. Because of this, and notwithstanding the initial representations by AMI Reichert's president to Messrs. Reichert and Peterson that the company's goal was to make Reichert Stamping profitable, Plaintiffs claim that AMI Reichert is clearly a liquidating entity and that its principal business was the liquidation of Reichert Stampings' assets. Plaintiffs claim that preparation for the liquidation mostly occurred outside the state of Ohio, and that AMI Reichert's PPB is the location of those activities. Plaintiffs also point out that those answering discovery requests on behalf of AMI Reichert were located in Indiana and Illinois. The Court need not decide what effect such claims would have on AMI Reichert's citizenship, because the Court must evaluate the company for citizenship purposes as of the date the complaint was filed: October 25, 2004. On that date, as discussed above, AMI Reichert was a going concern with its sole manufacturing operations and PPB in the state of Ohio.

 Likewise, Plaintiffs' insistence that the Court consider the citizenship of AMI Reichert's parent company, American Metals Industries, Inc. ("AMI"), and the fact that AMI used a single financing package to facilitate its purchase of Reichert Stamping and other, out-of-state entities is misplaced. "When formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent." *Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir.1990). Plaintiffs have not alleged a lack of formal separation between AMI Reichert and its parent company.

In sum, based on the testimony and the other evidence presented, the Court finds that the Plaintiffs have not met their burden of proving by a preponderance of the evidence that on the date they filed their complaint in this action, Defendant AMI Reichert had its principal place of business anywhere other than Ohio. Because Plaintiffs have failed to demonstrate that the parties in this action are of diverse citizenship, Defendant AMI Reichert's motion to dismiss is granted.

### CONCLUSION

Based on the foregoing, Defendant AMI Reichert's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 12) is granted.

IT IS SO ORDERED.